CATHERINE KEVANE (CSB No. 215501)
ckevane@fenwick.com
MARIE C. BAFUS (CSB No. 258417)
mbafus@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

KATHRYN HAUH (CSB No. 347786)
khauh@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone:     650.988.8500
Facsimile.     650.938.5200

Y. MONICA CHAN (WA Bar No. 58900)
*Appearing Pro Hac Vice*
mchan@fenwick.com
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA  98101
Telephone:     206.389.4510
Facsimile:     650.938.5200

Attorneys for Defendant ANDREW R. ALLEN

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GRITSTONE BIO, INC. SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No.: 3:24-cv-03640-CRB<br><br><u>CLASS ACTION</u><br><br>**DEFENDANT ANDREW R. ALLEN'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Date:     June 20, 2025<br>Time:     10:00 a.m.<br>Dept:     Courtroom 6—17th Floor<br>Judge:     Hon. Charles R. Breyer |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................ 1

II.   THE OPPOSITION CONFIRMS THERE IS NO ACTIONABLE CLAIM. .................... 1

    A.   Plaintiffs Fail to Overcome the Protections of the PSLRA Safe Harbor. ............... 2

    B.   Statements Predating the September 2023 BARDA Contract Are Inactionable. ... 4

    C.   The Opposition Confirms That Statements Regarding the Phase 2b Study Are Not Actionable. ........................................................................................................... 6

        1.   Statements Regarding the BARDA Contract ............................................. 6

        2.   Statements Regarding the Study Launch and Cash Runway ..................... 7

        3.   Statements Regarding the Study Delay ....................................................... 9

    D.   The Opposition Confirms That Mr. Clark's Purported "Expert" Opinion Should Not Be Considered and Do Nothing to Establish Scienter or Falsity. ................... 9

III.  THE OPPOSITION CONFIRMS THAT THE AC FAILS TO STATE A COGENT AND COMPELLING INFERENCE OF SCIENTER. ............................................................. 11

IV.   PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION. ................................................ 15

V.    Conclusion ..................................................................................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*3226701 Canada, Inc. v. Qualcomm, Inc.*,
2017 WL 4759021 (S.D. Cal. Oct. 20, 2017), *aff'd sub nom. Pub. Emps. Ret.
Sys. of Miss. v. Qualcomm, Inc.*, 773 F. App'x 987 (9th Cir. 2019) ........................................ 8

*Applestein v. Medivation, Inc.*,
561 F. App'x 598 (9th Cir. 2014) ................................................................................. 10

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ....................................................................................... 7

*Browning v. Amyris, Inc.*,
2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ............................................................ 14

*Dresner v. Silverback Therapeutics, Inc.*,
2023 WL 2913755 (W.D. Wash. Apr. 12, 2023) .......................................................... 2

*E Ohman J v. NVIDIA Corp.*,
81 F.4th 9180 (9th Cir. 2023) ......................................................................... 10, 11, 12

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ....................................................................................... 12

*Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ................................................................................. 11, 13

*Hatamian v. Advanced Micro Devices, Inc.*,
87 F. Supp. 3d 1149 (N.D. Cal. 2015) .......................................................................... 5

*Huei-Ting Kang v. PayPal Holdings, Inc.*,
620 F. Supp. 3d 884 (N.D. Cal. 2022) ........................................................................ 12

*In re Axsome Therapeutics, Inc. Sec. Litig.*,
2025 WL 965265 (S.D.N.Y. Mar. 31, 2025) ................................................................ 5

*In re Dermtech, Inc. Sec. Litig.*,
2024 WL 4941026 (S.D. Cal. Dec. 2, 2024) ............................................................... 14

*In re Emergent BioSolutions Inc. Sec. Litig.*,
2023 WL 5671608 (D. Md. Sept. 1, 2023) ................................................................... 5

*In re Eventbrite, Inc. Sec. Litig.*,
2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ........................................................... 5, 9

*In re Nektar Therapeutics Secs. Litig.*,
34 F.4th 828 (9th Cir. 2022) ....................................................................................... 10

FENWICK & WEST LLP
ATTORNEYS AT LAW

*In re Pivotal Sec. Litig.*,
  2020 WL 4193384 (N.D. Cal. July 21, 2020).................................................................. 2, 3, 14

*In re PTC Therapeutics Inc. Sec. Litig.*,
  2017 WL 3705801 (D.N.J. Aug. 28, 2017)............................................................................. 13

*In re Rigel Pharms., Inc.*,
  2010 WL 8816155 (N.D. Cal. Aug. 24, 2010), *aff'd*, 697 F.3d 869 (9th Cir. 2012) ........................................................................................................................................ 14

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012).................................................................................................. 8

*In re Silicon Graphics, Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999), *superseded by statute on other grounds*.................................... 9

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
  2018 WL 4181954 (N.D. Cal. Aug. 31, 2018)........................................................................ 8

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002).............................................................................................. 15

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016).............................................................................................. 12

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014)................................................................................................ 15

*Lopes v. Fitbit, Inc.*,
  2020 WL 1465932 (N.D. Cal. Mar. 23, 2020), *aff'd*, 848 F. App'x 278 (9th Cir. 2021) ........................................................................................................................................ 9

*McGovney v. Aerohive Networks, Inc.*,
  367 F. Supp. 3d 1038 (N.D. Cal. 2019) ................................................................................. 9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008)................................................................................................ 1

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014).................................................................................................... 5

*Murphy v. Precision Castparts Corp.*,
  2017 WL 3084274 (D. Or. June 27, 2017) ............................................................................. 3

*Murphy v. Precision Castparts Corp.*,
  2021 WL 2080016 (D. Or. May 24, 2021) ............................................................................. 3

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020)................................................................................................ 15

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
  780 F. App'x 480 (9th Cir. 2019) ......................................................................... 12

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*,
  2024 WL 5399664 (N.D. Cal. Sep. 18, 2024) ........................................................ 9

*Plumbers & Steamfitters Local 60 Pension Tr. v. Meta Platforms, Inc.*,
  2024 WL 4251896 (N.D. Cal. Sept. 17, 2024) .................................................... 3, 7

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ......................................................................... 2, 11

*Pub. Pension Fund Grp. v. KV Pharm. Co.*,
  679 F.3d 972 (8th Cir. 2012) ............................................................................... 5

*Rihn v. Acadia Pharms. Inc.*,
  2016 WL 5076147 (S.D. Cal. Sept. 19, 2016) ...................................................... 13

*Robb v. Fitbit, Inc.*,
  2017 WL 219673 (N.D. Cal. Jan. 19, 2017) ......................................................... 12

*Rok v. Identiv, Inc.*,
  2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd*, 716 F. App'x 663 (9th Cir.
  2018) ............................................................................................................... 11

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001), *abrogated on other grounds* ...................................... 8

*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ....................................................................... 12, 14

*Salzman v. ImmunityBio, Inc.*,
  753 F. Supp. 3d 1050 (S.D. Cal. 2024) ................................................................ 10

*Schneider v. Cal. Dep't of Corr.*,
  151 F.3d 1194 (9th Cir. 1998) .............................................................................. 6

*Sgarlata v. PayPal Holdings, Inc.*,
  409 F. Supp. 3d 846 (N.D. Cal. 2019), *aff'd sub nom. Eckert v. PayPal
  Holdings, Inc.*, 831 F. App'x 366 (9th Cir. 2020) ................................................. 10

*Todd v. STAAR Surgical Co.*,
  2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ....................................................... 11

*United States v. Goyal*,
  629 F.3d 912 (9th Cir. 2010) .............................................................................. 13

*Webb v. SolarCity Corp.*,
  884 F.3d 844 (9th Cir. 2018) .............................................................................. 14

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Weston Fam. P'ship LLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022).................................................................................................. 8

*Wochos v. Tesla, Inc.*,
   2019 WL 1332395 (N.D. Cal. Mar. 25, 2019) ....................................................................... 2

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ................................................................................................ 2

*Yanek v. Staar Surgical Co.*,
   388 F.Supp.2d 1110 (C.D. Cal. 2005)................................................................................... 11

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009)................................................................................................. 13

**STATUTES**

15 U.S.C. § 78u-5(c)(1)(B) ...................................................................................................... 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ................................................................................................................... 1

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I.  INTRODUCTION

Plaintiffs' Opposition ("Opposition" or "Opp.") fails to offer any meaningful response to the pleading deficiencies identified in Andrew R. Allen's motion to dismiss ("Motion" or "Mot."),[1] at times misstating the law, mischaracterizing the pleadings, and ultimately confirming that this case is precisely the sort of fraud by hindsight that courts routinely reject.  Plaintiffs' central theory is that the March 9, 2023 through August 9, 2023 statements regarding Gritstone's manufacturing capabilities and the CORAL program generally were false and misleading because "Gritstone did not have the necessary cGMP capabilities to comply with the BARDA Contract's timeline."  AC ¶ 7.  But the fact that the BARDA contract *did not exist at the time these statements were made* negates any theory of falsity.  Plaintiffs effectively concede the point, addressing this fundamental temporal disconnect in a two-sentence footnote and then shifting their theory.  *See* Opp. at 7-8 n.2.  Plaintiffs likewise have no answer to the fact the FDA did not inform the Company that it would require the use of fully GMP-grade materials until *months after* the September 27, 2023, October 11, 2023, and November 8, 2023 challenged statements were made.

Plaintiffs' attempt to evade the protections of the safe harbor for forward-looking statements also fails because Plaintiffs ignore applicable law, mischaracterize the pleadings, and ignore the Company's robust risk disclosures.  And, once again, Plaintiffs have no answer for the temporal disconnect that dooms their claims.  Plaintiffs also concede that the Company's forward-looking statements are protected by the second prong of the safe harbor, as there was no actual knowledge of falsity.  Nor do plaintiffs have any answer to the patent deficiencies in their scienter allegations.

Try as they might, Plaintiffs cannot convert after-the-fact events into claims for securities fraud.[2]  As explained in the Motion and below, the AC should be dismissed with prejudice.

## II.  THE OPPOSITION CONFIRMS THERE IS NO ACTIONABLE CLAIM.

Plaintiffs all but ignore the stringent pleading standards imposed by the PSLRA and Rule 9(b).  *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008).  As explained below, not only are the challenged statements protected under the safe harbor, but the

---

[1] Capitalized, undefined terms have the same meaning as in the Motion.  All references to "Ex." are to the exhibits attached to the Declaration of Catherine D. Kevane.

[2] Plaintiffs do not address, and therefore waived any argument as to, the Section 20(a) claim.

AC fails to plead with specificity any false or misleading statements.

**A.    Plaintiffs Fail to Overcome the Protections of the PSLRA Safe Harbor.**

Plaintiffs try to sidestep the PSLRA safe harbor, arguing that the May 11, 2023, September 27, 2023, October 11, 2023, November 8, 2023, and February 12, 2024 challenged statements about the Company's cash runway and launch of the Phase 2b Study are "not forward-looking" but are "'on track' assurances" of "present fact." Opp. at 13. That argument is contrary to law and counterfactual.

*First*, the challenged statements are quintessential forward-looking statements regarding the "plans and objectives of management for future operations" and "future economic performance." *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014). For instance, "we *expect* to initiate the study in the first quarter of 2024" and "[o]ur *future* capital requirements depend on many factors" are generic and inherently future-oriented statements about Gritstone's goals and projections. Mot. at 12, n.3 (identifying the challenged forward-looking statements); *see, e.g.*, *Dresner v. Silverback Therapeutics, Inc.*, 2023 WL 2913755, at *11 (W.D. Wash. Apr. 12, 2023) (statement that a study "is anticipated in the first quarter of 2022" is "forward-looking [] as to future development plans"); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *15-16 (N.D. Cal. July 21, 2020) ("we expect to see continued growth" is a forward-looking statement) (Breyer, J.). Nothing in these statements describe the "current status of the CORAL Phase II process." Opp. at 13.

*Second*, Plaintiffs' concession that these statements are analogous to "on track" statements confirms that they are forward-looking. As this Court has held, "on track" assertions "fall solidly within the category of forward-looking statements regarding plans and objectives for future operations." *Wochos v. Tesla, Inc.*, 2019 WL 1332395, at *4 (N.D. Cal. Mar. 25, 2019) (Breyer, J.). The Ninth Circuit agreed: "[b]ecause any announced 'objective' for 'future operations' *necessarily* reflects an implicit assertion that the goal is achievable based on current circumstances, an unadorned statement that a company is 'on track' to achieve an announced objective" simply "declar[es] or reaffirm[s] the objective itself." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021). Plaintiffs' reliance on cases that predate *Wochos* is misplaced. Opp. at 13 (citing *Rihn v. Acadia Pharms. Inc.*, 2016 WL 5076147 (S.D. Cal. Sept. 19, 2016) and *Murphy v. Precision*

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Castparts Corp.*, 2017 WL 3084274 (D. Or. June 27, 2017)).  In fact, the *Murphy* court reversed its pre-*Wochos* decision because "generic" statements that convey progress without "'concrete descriptions' of present facts" (*e.g.*, "nothing has gone negative") are protected by the safe harbor. *Murphy v. Precision Castparts Corp.*, 2021 WL 2080016, at *4 (D. Or. May 24, 2021).

Plaintiffs do not dispute that the Company adequately identified the challenged statements as forward-looking.  Nor do Plaintiffs dispute that the statements were accompanied by detailed risk disclosures that cautioned of "potential delays in our ongoing clinical trials," that we "cannot be certain that our suppliers will continue to provide us with the quantities of these raw materials that we require," and that "BARDA is entitled to terminate the BARDA Contract for convenience at any time… and is not required to provide continued funding."  Ex. 1 at 53; Ex. 2 at 43; Ex. 10 at 46-47; *see also* Mot. at 5-6, 8, 13-14.  Plaintiffs are thus left to argue in the most conclusory terms that the Company's warnings "about future risk cannot insulate from liability the failure to disclose that the risk has transpired." Opp. at 14.  But the AC itself establishes that the risk had not transpired at the time of the challenged statements.

To start, the Company was awarded the BARDA Contract on September 27, 2023 and any risks related to the Phase 2b Study could not possibly have materialized before that because ***the Phase 2b Study itself had not materialized***.  AC ¶¶ 29, 80.  And no risk regarding GMP-grade materials for the Phase 2b study could have arisen, much less materialized, until ***after*** the FDA stated that it would require the use of GMP-grade materials ***months later***.  *Id.* ¶¶ 62, 113 ("In January 2024, we received the formal clinical hold letter from the FDA, identifying certain CMC and clinical deficiencies.  The FDA informed us that, among other changes, we will be required to use GMP-grade materials…"); *see also* Ex. 15 at 37-38.  Dr. Allen "cannot be held liable for failing to disclose information that does not exist." *Plumbers & Steamfitters Local 60 Pension Tr. v. Meta Platforms, Inc.*, 2024 WL 4251896, at *16 n.31 (N.D. Cal. Sept. 17, 2024).  For the same reason, none of the challenged "risk factors" statements (AC ¶¶ 67, 72-73, 78, 90, 92) are actionable.  *See Pivotal*, 2020 WL 4193384, at *6.

The Motion also established that the challenged statements are protected under the second prong of the safe harbor because Plaintiffs put forth no specific, contemporaneous facts to establish

Dr. Allen's knowledge that any forward-looking statements were false when made or otherwise not achievable. 15 U.S.C. § 78u-5(c)(1)(B). The Opposition does not address this point and effectively admits that Dr. Allen had no actual knowledge of falsity. *See* Opp. at 16.

**B.        Statements Predating the September 2023 BARDA Contract Are Inactionable.**

Plaintiffs do not address the Company's March 9, 2023, May 11, 2023, and August 9, 2023 statements about the CORAL Phase 1 studies and thus, effectively concede that they are not actionable. *See* Opp. at 6-15; Mot. at 16. As explained below and in the Motion, Plaintiffs also fail to adequately challenge the March 9, 2023 statements about Gritstone's manufacturing.

The Opposition now makes clear that Plaintiffs' theory of falsity for the manufacturing statements hinges on conflating two different things: (1) Gritstone's compliance with GMP standards in **manufacturing** vaccine candidates, and (2) its ability to **procure** GMP-grade raw materials manufactured by third-party suppliers. The challenged statements in the March 9, 2023 Form 10-K addressed the former, explaining that Gritstone's Pleasanton, California manufacturing facility was "designed in compliance with cGMP" and that manufacturing (whether in-house or through CMOs) "is performed under cGMP or similar guidelines." AC ¶¶ 65, 67; *see* Ex. 1 at 5, 52. The AC does not allege, let alone with the requisite specificity, that Gritstone's Pleasanton facility or in-house or CMO manufacturing violated GMP standards as of March 2023 (or ever).

Faced with this fatal defect, Plaintiffs resort to mischaracterization, claiming that "CW1 revealed the Company *already* had been struggling to get its manufacturing process cGMP compliant." Opp. at 6. But CW1 never once suggests that Gritstone's or its CMOs' manufacturing process violated GMP standards. *See* AC ¶¶ 44-49. Instead, CW1—who never claims to have had any contact with Dr. Allen—asserts that the Company discussed "the need to **find** all GMP-grade raw materials for the manufacturing of the Company's COVID-19 vaccine" and "how to **procure** the needed cGMP components." *Id.* ¶ 45 (emphases added). But there could have been no procurement issues when the statements were made in March 2023: the only then-ongoing CORAL studies were in Phase 1, which Plaintiffs admit did not require GMP-grade materials, and the Phase 2b Study did not come into the picture until September 2023. *Id.* ¶ 29. CW1's account cannot be credited and is temporally defective.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Temporal defect aside, there is a glaring disconnect between what Gritstone said (manufacturing) and Plaintiffs' theory of falsity (procurement). In Plaintiffs' cited case, *In re Axsome Therapeutics, Inc. Sec. Litig.*, the company repeatedly represented that "its suppliers would be capable of providing sufficient materials to meet their clinical trial needs." 2025 WL 965265, at *2 (S.D.N.Y. Mar. 31, 2025). Given the known problems at the supplier, the court found that the company misled investors by "creat[ing] an impression that [it] was not facing supply issues." *Id.* at *2, 5. Unlike *Axsome*, there is no allegation here that Gritstone touted its ability to supply raw materials. Far from it. The Form 10-K repeatedly warned that the Company "rel[ied] on third-party suppliers for certain materials" for its product candidates and faced many challenges:

> Our dependence on these third-party suppliers and the challenges we may face in obtaining adequate supplies of materials involve several risks, including limited control over pricing, availability, quality and delivery schedules. ***As a small company, our negotiation leverage is limited, and we are likely to get lower priority than our larger competitors. We cannot be certain that our suppliers will continue to provide us with the quantities of these raw materials that we require or satisfy our anticipated specifications and quality requirements. Any supply interruption in limited or sole sourced raw materials could materially harm our ability to manufacture our product candidates until a new source of supply, if any, could be identified and qualified.*** We may be unable to find a sufficient alternative supply channel in a reasonable time or on commercially reasonable terms. ***Any performance failure on the part of our suppliers could delay the development and potential commercialization of our product candidates, including limiting supplies necessary for clinical trials and regulatory approvals, which would have a material adverse effect on our business.***

Ex. 1 at 52-53, 111 (emphases added). Because "the reasons Plaintiffs offer to show falsity … bear no connection to the substance of the statements," Plaintiffs fail to plead falsity.[3] *See In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *13 (N.D. Cal. Apr. 28, 2020).

Plaintiffs rely on a declaration from Ms. Economides filed in the Company's bankruptcy proceedings, claiming that it shows "manufacturing failures." Opp. at 8-9. That Plaintiffs must

---

[3] Plaintiffs' cited cases are distinguishable on this basis. *See, e.g.*, *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014) (statements regarding compliance with environmental regulations were false when made due to knowledge of pollution problems); *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972 (8th Cir. 2012) (statements that defendant's facilities complied with regulations were actionable given knowledge of the FDA's post-inspection notice of violations); *In re Emergent BioSolutions Inc. Sec. Litig.*, 2023 WL 5671608 (D. Md. Sept. 1, 2023) (statements regarding the manufacturing capability of defendant's facility were actionable given knowledge of mold, understaffing, and other problems, including as noted in BARDA and FDA inspections); *Hatamian v. Advanced Micro Devices, Inc.*, 87 F. Supp. 3d 1149, 1161 (N.D. Cal. 2015) (representation that the company's production "yield problems" had resolved would mislead investors that "sales in the months to come would not be impeded by similar production issues").

FENWICK & WEST LLP
ATTORNEYS AT LAW

resort to material outside of the AC only underscores their pleading failure; the Court should decline to consider the declaration. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). In any event, the declaration, as quoted, refers generically to "manufacturing challenges," but it never suggests that Gritstone's manufacturing process violated GMP standards. Opp. at 8.

### C. The Opposition Confirms That Statements Regarding the Phase 2b Study Are Not Actionable.

As explained in the Motion, the AC alleges no particularized facts to establish that the Company's September 27, 2023, October 11, 2023, November 8, 2023, and February 12, 2024 statements describing the terms of the BARDA contract, explaining that preparations for the Phase 2b Study were "underway," and announcing the decision to postpone the Phase 2b Study were false or misleading when made. *See* Mot. at 16-19. The Opposition confirms this conclusion.

#### 1. Statements Regarding the BARDA Contract

Having conceded that the Company accurately summarized the terms of the BARDA Contract (*see* Mot. at 16-17; AC ¶¶ 80, 86, 89), Plaintiffs resort to arguing that the admittedly true statements were somehow misleading because the Company failed to disclose that it "did *not* have the cGMP compliance necessary to comply the BARDA contract or FDA regulations." Opp. at 9. As before, that argument suffers from a temporal disconnect. The BARDA Contract does not specify the grade of materials, much less require the use of fully GMP-grade ones. Ex. 7 at 38 (stating only that the GMP standard applies to the "clinical manufacturing, processing, packaging, storage, and delivery of the product"). And the Company did not receive the FDA's formal clinical hold letter, which laid out the requirement for fully GMP-grade materials for the Phase 2b Study, until January 2024—months after the challenged statements. AC ¶ 62.

Plaintiffs' argument also hinges on cherry-picking the challenged statements. According to Plaintiffs, "[b]y lauding that '[f]ollowing successful completion of the base period' in Q1 2024, Gritstone 'will receive funding of up to an estimated $433 million to conduct a 10,000 participant randomized [CORAL] Phase 2b comparative study,' Defendants gave the impression that no known material setbacks would upend this collaboration." Opp. at 9. The purported quotes are, in fact, creatively edited snippets from different statements. Read in proper context, the Company

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

accurately described the terms of the BARDA Contract and then simply stated that "[f]ollowing successful completion of the base period, the BARDA Contract provides for approximately $423 million of additional BARDA funding for two stages *gated at BARDA's discretion*…."  AC ¶ 80 (emphasis added).  The Company also cautioned that "BARDA is entitled to terminate the BARDA Contract for convenience at any time," that "BARDA may suspend or terminate the BARDA Contract should we fail to achieve key milestones or fail to comply with the operating procedures and processes approved by BARDA and its audit agency," and that "[t]here can be no assurance" on either front.  Ex. 10 at 47.  Nothing in those statements can be read as an assurance that the Company would not face difficulties.  Nor do any of the statements speak to the use of fully GMP-grade materials—a requirement that (as noted) did not become known until months later. Accordingly, none of these statements are actionable.  *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (an omission is actionable only if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists").

### 2.    Statements Regarding the Study Launch and Cash Runway

As the Motion established, statements that "we look forward to initiating the Phase 2b study… in the first quarter of 2024" and "preparations for the study are underway" are not actionable because they are protected under the safe harbor for forward-looking statements, admittedly accurate, or both.  Mot. at 11-14, 17; *supra* § II.A.  The Opposition does not alter that conclusion.

Plaintiffs do not contest that their own allegations establish that preparations *were* "underway" in 2023.  AC ¶ 80.  Instead, Plaintiffs argue that the statements were misleading because supposedly, "there was no chance for the Company to start by that Q1 2024 deadline given the known and pervasive inability to comply with cGMP."  Opp. at 10.  Once again, Plaintiffs' theory ignores that the challenged statements *preceded* the receipt of the FDA's clinical hold letter. AC ¶ 113.  It is axiomatic that a statement cannot be misleading for omitting what has not yet occurred.  *See Meta Platforms*, 2024 WL 4251896, at *16.  Plaintiffs' theory is also irreconcilable with the fact that the statements provided no assurances that the Phase 2b Study would be ready by the deadline.  To the contrary, the Company expressly advised of the risks in achieving those

FENWICK & WEST LLP
ATTORNEYS AT LAW

deadlines, procuring raw materials, and the business overall. *See* Mot. at 13; s*upra* § II.A.

More fundamentally, by speaking about the Phase 2b Study, the Company did not thereby assume the duty to disclose everything that may conceivably relate to the study or "every internal development." *Weston Fam. P'ship LLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022); *see also In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012) ("a company is not required to disclose every safety-related result from a clinical trial, even if the company discloses some safety-related results"); *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 2018 WL 4181954, at *7 (N.D. Cal. Aug. 31, 2018) (positive statements about autonomous vehicle program did not obligate defendant to disclose that the program "was not meeting its internal goals"). The challenged statements merely conveyed optimism for a Q1 2024 launch and that preparations were ongoing. As the Ninth Circuit explained, a similar statement like "'I'm continuing it,' or 'It's ongoing' does not misleadingly suggest that the person has not suffered setbacks." *Weston*, 29 F.4th at 620 n.3; *see also 3226701 Canada, Inc. v. Qualcomm, Inc.*, 2017 WL 4759021, at *16 (S.D. Cal. Oct. 20, 2017) ("on track" statement was inactionable, despite technical issues, where no facts showed that the goal was unachievable), *aff'd sub nom. Pub. Emps. Ret. Sys. of Miss. v. Qualcomm, Inc.*, 773 F. App'x 987 (9th Cir. 2019).

The Opposition shows that Plaintiffs have put forth no well-pled, contemporaneous facts to support their faulty theory. Instead, it makes clear that the claims are based entirely on the defective accounts of three CWs and the purported "expert," Mr. Clark. Even setting aside their unreliability and lack of direct knowledge (*infra* §§ II.D, III), none of the CWs or Mr. Clark sets forth why GMP-grade materials were required or quantifies the alleged inability to procure GMP-grade raw materials, offering only vague descriptions such as "'long list' of raw materials" or "[s]ome, we would not be able to get." AC ¶¶ 46, 48. The AC also offers no specifics regarding what was known about the alleged procurement issue *when* the challenged statements were made. *Id.* ¶¶ 44-54, 57-63 (alleging only "by end of 2023" and "early 2024" or offering no dates at all). At most, the AC alleges that it became known at *some* point that there were *some* challenges in procuring *some* GMP-grade materials, but the mere existence of "[p]roblems and difficulties" in a business does not render positive statements false. *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001),

*abrogated on other grounds*; *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *6 (N.D. Cal. Mar. 23, 2020) ("that a new program has kinks does not make a positive statement about the program false"), *aff'd*, 848 F. App'x 278 (9th Cir. 2021).   Put simply, the Opposition confirms there are no contemporaneous facts to demonstrate that the Q1 2024 date was not unachievable.  *See, e.g.*, *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) (affirming dismissal where allegations lacked "specifics," forcing the court to "speculate" as to the "severity of the problems"), *superseded by statute on other grounds*; *Eventbrite*, 2020 WL 2042078, at *11 (no falsity where former employee alleged that "cost would be 'astronomical'" but plaintiffs "fail to quantify the term 'astronomical'"); *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1056 (N.D. Cal. 2019) (no falsity absent "allegations that quantify the actual staffing problems" or "specific information about the sales personnel that were involved").

Plaintiffs contend that statements about the Company's cash runway are actionable because they "gave investors a highly misleading impression of the level of risk associated with the CORAL Phase II rollout." Opp. at 15.  This argument fails for the same reasons, including because the actual statements and cautionary language cannot be read as creating any such impression.  *See* AC ¶¶ 80, 89-90, 94.  Finally, Plaintiffs do not dispute that many of the challenged statements constitute corporate optimism or puffery that are inactionable under well-established Ninth Circuit law.  Mot. at 19.

### 3.    Statements Regarding the Study Delay

The Motion established that the February 12, 2024 announcement delaying the Phase 2b Study to "the Fall of 2024 rather than 1Q24" is not actionable.  Mot. at 18.  The Opposition does not contest, and therefore concedes, this conclusion.  *See Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2024 WL 5399664, at *11 (N.D. Cal. Sep. 18, 2024).

### D.    The Opposition Confirms That Mr. Clark's Purported "Expert" Opinion Should Not Be Considered and Do Nothing to Establish Scienter or Falsity.

The Motion established that Mr. Clark's opinions are unreliable, that he lacks personal knowledge about the Company, that his opinions are based on unreliable CW accounts or on no identified basis at all, and that his opinions are too conclusory and speculative to be considered.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Mot. at 19-21. Plaintiffs make little effort to address these fundamental defects. The Opposition even relegates Plaintiffs' discussion of Mr. Clark to a single footnote, but it does not dispute that Mr. Clark (1) lacks personal knowledge about the Company and its procurement efforts; (2) reviewed no internal documents; and (3) never interacted with Dr. Allen or any other employees. Opp. at 11, n.4. Plaintiffs likewise do not dispute that the AC reflects counsel's characterizations and summary, as opposed to direct quotes from Mr. Clark. In rebuttal, Plaintiffs only offer the conclusory assertion that Mr. Clark "identifies with particularity all sources, assumptions, and facts on which he relied." *Id.* But the cited paragraphs (AC ¶¶ 56-63) contain no such particulars; instead, they make clear that Mr. Clark's opinions were "based on his assessment of the timeline and CW1's statements." *Id.* ¶ 57. Even then, Mr. Clark offers no helpful expertise, serving as a mere conduit for CW1's account—which is itself unreliable and based on speculation rather than particularized facts. *See* Mot. at 20; *infra* § III. Mr. Clark's opinions thus raise no inference of scienter because they are not "described with sufficient particularity to establish his reliability and personal knowledge," and his opinions are also not "indicative of scienter." *Sgarlata v. PayPal Holdings, Inc.*, 409 F. Supp. 3d 846, 860 (N.D. Cal. 2019), *aff'd sub nom. Eckert v. PayPal Holdings, Inc.*, 831 F. App'x 366 (9th Cir. 2020); *see also Applestein v. Medivation, Inc.*, 561 F. App'x 598, 600 (9th Cir. 2014) (expert opinion insufficient to establish falsity absent "personal knowledge of the facts on which he bases his conclusion").

There is also no dispute that Mr. Clark neither quantifies the supposed "known lack of cGMP materials available throughout 2023" nor specifies when it became known. AC ¶ 57. Plaintiffs rely on *E Ohman J v. NVIDIA Corp.*, but in that case, plaintiffs' expert created a sophisticated financial calculation, along with a "detailed analysis" and "detailed information about [its] methodology as well as a particularized recitation of facts upon which [it] relied." 81 F.4th 918, 930 (9th Cir. 2023). Nothing in *Ohman* purports to disturb the Ninth Circuit's rule that "[p]laintiffs cannot evade the PSLRA's exacting pleading standards by merely citing an expert who makes assertions about falsity based on questionable assumptions and unexplained reasoning." *See In re Nektar Therapeutics Secs. Litig.*, 34 F.4th 828 (9th Cir. 2022). This rule squarely applies here. *See Salzman v. ImmunityBio, Inc.*, 753 F. Supp. 3d 1050, 1066 (S.D. Cal. 2024) (rejecting

FENWICK & WEST LLP
ATTORNEYS AT LAW

Mr. Clark's opinions, which were "conclusory and bereft of the 'carefully disclosed and … consistently conservative' analytical assumptions that accompanied the expert opinion" in *Ohman*).

### III.    THE OPPOSITION CONFIRMS THAT THE AC FAILS TO STATE A COGENT AND COMPELLING INFERENCE OF SCIENTER.

The Motion established that the alleged facts do not give rise to a strong inference of scienter as to Dr. Allen. Challenged to identify "in great detail, facts that constitute strong circumstantial evidence of deliberate reckless or conscious misconduct on the part of" Dr. Allen (*Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008)), the Opposition confirms that there are none. Instead, citing *Yanek v. Staar Surgical Co.*, 388 F.Supp.2d 1110 (C.D. Cal. 2005) ("*STAAR I*") and *Todd v. STAAR Surgical Co.*, 2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ("*STAAR II*"), Plaintiffs try to evade the strict pleading standard for scienter by arguing, incorrectly, that "[such] exacting facts are not necessary." Opp. at 16-17. In fact, both courts reiterated that a plaintiff must plead specific facts showing that defendants acted with "actual intent to deceive," meaning actual knowledge or, at a minimum, "deliberate recklessness" involving "some degree of intentional or conscious misconduct." *STAAR I*, 388 F.Supp.2d at 1124, 31; *see also STAAR II*, 2016 WL 6699284, *12. Plaintiffs' allegations come nowhere near that standard.

***The Opposition confirms that the CWs do nothing to establish scienter***. Plaintiffs admit that neither CW1 nor CW3 had any interaction with Dr. Allen but claim that this fact is "irrelevant."[4] Opp. at 17 n.8. Not so. *See Intuitive Surgical*, 759 F.3d at 1062 (rejecting "impressions of witnesses who lacked direct access to the executives"); *Rok v. Identiv, Inc.*, 2017 WL 35496, at *14 (N.D. Cal. Jan. 4, 2017) (witness's account not "indicative of scienter" absent any "evidence beyond hearsay to establish [his] reliability") (Breyer, J.), *aff'd*, 716 F. App'x 663 (9th Cir. 2018); Mot. at 22-23.

Plaintiffs then claim that CW1 and CW3 show "Defendant Allen's Knowledge," but they do not identify a single fact to support that claim. Opp. at 17. Instead, they repeat the defective, vague, and conclusory allegations in the AC, including that "[o]ne hundred percent this [was]

---

[4] The Opposition abandons CW2, who left the Company before the BARDA Contract was awarded and was absent for most of the class period. Mot. at 23; AC ¶ 51. Plaintiffs' silence confirms that CW2's account raises no inference of scienter.

FENWICK & WEST LLP
ATTORNEYS AT LAW

be[ing] conveyed to the CEO" and "[n]othing goes without his knowledge"—which do nothing to establish scienter.[5]  *Id.*; Mot. at 22-23.  More devastating, Plaintiffs concede that they do not offer particularized facts about Dr. Allen's "state of mind," arguing that they need not do so.  Opp. at 18. That too is incorrect.  *See Huei-Ting Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 896 (N.D. Cal. 2022) (Breyer, J.) (a plaintiff must plead particularized facts and "clear allegations of scienter," "i.e., a wrongful state of mind," whereas "innocent inferences as to the officers' state of mind" do not meet this standard).

> ***Dr. Allen's Expertise and Knowledge do Not Establish Scienter.***  According to Plaintiffs, the mere fact that Dr. Allen "[s]poke [d]irectly [a]bout the BARDA-CORAL Phase II Trial" is sufficient to establish scienter.  Opp. at 18.  Plaintiffs claim that when an executive "holds themselves out as knowledgeable about a product of 'critical importance' to a company, it is reasonable to assume that the executive either knew or was reckless in not knowing negative information regarding it."  *Id.* at 18-19.  But Plaintiffs do not attempt to identify what the negative information was, when it became available, or any of the other specifics necessary to establish scienter.  The cases cited by Plaintiffs confirm the point.  *See, e.g.*, *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008) ("corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter," absent "additional allegation of specific information conveyed to management and related to the fraud").[6]

---

[5] Plaintiffs' cited cases are all inapposite. In *Lloyd v. CVB Fin. Corp.*, the witness statements "were specific in time, context, and details." 811 F.3d 1200, 1208 (9th Cir. 2016). In *Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, the court concluded that the witness statements "form[ed] a plausible and coherent narrative," and the witness "was 'in a position to be personally knowledgeable'" of the information alleged. 780 F. App'x 480, 485 n.5 (9th Cir. 2019). In *Robb v. Fitbit, Inc.*, the witnesses had "personal knowledge about the contents of the reports" being presented to defendants. 2017 WL 219673, at *5 (N.D. Cal. Jan. 19, 2017). In *Ohman*, one witness had direct interactions with the defendant, and the other described in detail the defendant's access to the sales data at issue and regular attendance at meetings where the data was discussed. 81 F.4th at 938-39. The defendant also publicly admitted that he carefully monitored the sales data. *Id.* at 939. In *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, the complaint "include[d] particularized details about the data" in the company's revenue platform, multiple witness accounts corroborated defendant's access to the data, and the defendant himself publicly implied that he accessed the data. 63 F.4th 747, 773 (9th Cir. 2023). The AC offers no such facts and none of the CWs has any personal knowledge about *what* was conveyed to Dr. Allen about procurement for the Phase 2b Study, by *whom*, *how*, or *when*.

[6] Plaintiffs' other cases are also inapt. In *Acadia*, the plaintiffs alleged that defendants "had access to the [manufacturing] information at issue," and the CEO admitted that "he was 'the ultimate report for manufacturing and CMC.'" 2016 WL 5076147, at *9. The plaintiffs in *In re PTC Therapeutics*

FENWICK & WEST LLP
ATTORNEYS AT LAW

Plaintiffs' conclusory assertion that "Defendant Allen's education, experience, and role supports scienter" is equally incorrect. Opp. at 19. As the Ninth Circuit explained, if presumed expertise on a topic "were enough to establish scienter, then any action by a company [executive] that a juror could conclude in hindsight was false or misleading could subject him to fraud liability without regard to intent to deceive. That cannot be." *United States v. Goyal*, 629 F.3d 912, 919 (9th Cir. 2010); *see also* Mot. at 23-24.

Plaintiffs also argue in a footnote that "given such specific scienter allegations against Dr. Allen, the Court should reject the allegations of impermissible 'group pleading' out of hand." Opp. at 19, n.10. But Plaintiffs make no effort to rebut well-established law in the Ninth Circuit that group pleading fails to establish individual scienter. *See* Mot. at 21-22. And somewhat ironically, Plaintiffs' footnote follows a lengthy discussion in which the only cite to the AC is to the description of Dr. Allen's title and job history. *See* Opp. at 19 (citing AC ¶ 125). Plaintiffs then go on to violate the bar against group pleading again, by claiming that "*Defendants* expressly conferred with the FDA." Opp. at 20 (emphasis added). Yet even that conclusory allegation is also unsupported. Plaintiffs' sole basis is the Company's March 9, 2023 Form 10-K, which generally described a "pre-IND interaction with the FDA" (while *Phase 1* studies were going) but never identified the participants, let alone suggested Dr. Allen's involvement. *See* Ex. 1 at 35.

***Signing an SEC Filing Does Not Establish Scienter.*** Plaintiffs argue that Dr. Allen certified the accuracy of the Company's filings, raising an inference of scienter. Opp. at 21. But it is well-established that "Sarbanes-Oxley certifications are not sufficient, without more, to raise a strong inference of scienter." *Magistri*, 549 F.3d at 747; *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1004 (9th Cir. 2009).

***Plaintiffs Fail to Invoke the "Core Operations" Theory.*** The Opposition alludes to the core operations theory, arguing that "it would be 'absurd' … to think that the [Company's] CEO or CFO … were unaware of recurring cGMP failures." Opp. at 22-23. But Plaintiffs ignore that

---

*Inc. Sec. Litig.* challenged defendants' statements that implied "first-hand knowledge" of the alleged fraud, concerning a product that "accounted for 100% of [the company's] revenues." 2017 WL 3705801, at *17 (D.N.J. Aug. 28, 2017). The circumstances in *Acadia* and *PTC* do not exist here.

FENWICK & WEST LLP
ATTORNEYS AT LAW

this theory applies to only an "exceedingly rare category of cases." *S. Ferry*, 542 F.3d at 785 n.3. Successfully invoking this theory requires "either specific ***admissions*** by one or more corporate executives of detailed involvement in the minutia of a company's operations" or "witness accounts demonstrating that executives had ***actual involvement in creating false reports***." Mot. at 24 (quoting *Intuitive Surgical*, 759 F.3d at 1062); *see also Pivotal*, 2020 WL 4193384, at *18 (rejecting theory where plaintiffs alleged that "[d]efendants had generalized access to sales reports and 'occasionally' sat in on regular meetings"). There is no dispute that the AC alleges neither.

Plaintiffs argue that scienter should nonetheless be presumed because the CORAL Phase 2b Study was "[c]ritical" to the Company's survival and "depended on the implementation of a cGMP-compliant process." Opp. at 21-22. But this argument cannot square with CW2's assertion that the Company was more "focused on its oncology treatments," GRANITE and SLATE, so "[i]nfectious disease was always left to second place." AC ¶ 52. Indeed, the CORAL program was the least advanced of the Company's product candidates. *See* Ex. 1 at 90. The core operations theory does not apply simply because a plaintiff alleges that a product is important, much less on these facts. *See, e.g.*, Mot. at 21; *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *15 (N.D. Cal. Mar. 24, 2014) (rejecting core operations theory even where "signature product" was involved).

***The inference of good faith is far more compelling.*** The lack of allegations that Dr. Allen engaged in insider trading undercuts any inference of scienter. *See* Mot. at 24. Unable to refute this devastating fact, Plaintiffs argue that Dr. Allen's "motive" in seeing the Company's continued operation supports finding scienter. Opp. at 22-23. But such a "routine corporate objective[]," like maximizing profitability or "generat[ing] badly needed cash," is not sufficiently "specific" or "particularized" to raise a strong inference of scienter. *Webb v. SolarCity Corp.*, 884 F.3d 844, 854, 856 (9th Cir. 2018); *see also In re Dermtech, Inc. Sec. Litig.*, 2024 WL 4941026, at *12 (S.D. Cal. Dec. 2, 2024) (motive to "avoid bankruptcy" was "insufficient"); *In re Rigel Pharms., Inc.*, 2010 WL 8816155, at *13 (N.D. Cal. Aug. 24, 2010) (motive "to stave off insolvency" was insufficient), *aff'd*, 697 F.3d 869 (9th Cir. 2012).

Plaintiffs' theory also defies logic. The Phase 2b Study would provide only up to $10 million, whereas the remaining $423 million is gated "at BARDA's discretion." AC ¶ 80. Yet

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

according to Plaintiffs, and despite the Company's other promising and more advanced product candidates, Dr. Allen "bet the farm" on CORAL for $10 million and promised investors FDA approval even though he believed the Phase 2b Study was doomed to fail. *See* Opp. at 23. The Ninth Circuit rejected a similar theory in *Nguyen v. Endologix, Inc.* because it "does not make a whole lot of sense," especially where, as here, there are no allegations that "defendants had sought to profit from this scheme." 962 F.3d 405, 415 (9th Cir. 2020). Instead, the Ninth Circuit found that "the more plausible inference" is that "defendants based their statements about FDA approval on the status and progress" of the trial, "not that defendants were intentionally or with deliberate recklessness seeking to mislead the market." *Id.* at 419. Here too, the far more powerful and cogent inference is that Dr. Allen acted in good faith based on the then-available information.

## IV.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION.

In a footnote, Plaintiffs contend that the February 29, 2024, March 5, 2024, and April 1, 2024 statements were "causally related to Defendants' omissions about the pervasive cGMP issues." Opp. at 25, n.16. But based on Plaintiffs' own allegations, the "truth" was fully revealed on February 12, 2024, when the Company announced that the FDA would require "fully GMP-grade materials" and that the study was delayed to "the Fall of 2024." Exs. 12-13. None of the subsequent statements revealed new information indicative of "fraud;" instead, the Company announced a 40% reduction in force on February 29, 2024, reported on its full-year 2023 results on Form 10-K on March 5, 2024, and announced an underwritten public offering of shares on April 1, 2024. Exs. 14-15, 17. Plaintiffs do not allege any stock drop after the March 5, 2025 Form 10-K. *See* AC ¶¶ 109-114. And that stock prices moved in response to changed circumstances or disappointing news following the February 29, 2024 and April 1, 2024 statements is unremarkable and does not "reveal" fraud. *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014).

## V.    CONCLUSION

Because Plaintiffs' claims against Dr. Allen are irredeemably flawed, there is "no need to prolong the litigation by permitting further amendment." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002). The AC should be dismissed with prejudice.

Dated:    May 8, 2025

FENWICK & WEST LLP

By: *Catherine D. Kevane*
Catherine D. Kevane (CSB No. 215501)

*Attorneys for Defendant Andrew R. Allen*

FENWICK & WEST LLP
ATTORNEYS AT LAW