**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
*(pro hac vice application forthcoming)*
J. Alexander Hood II *(pro hac vice)*
Samantha Daniels *(pro hac vice)*
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
sdaniels@pomlaw.com

*Counsel for Lead Plaintiff Richard Rodriguez and Lead Counsel for the Class*
*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GRITSTONE BIO, INC. SECURITIES LITIGATION<br><br>This Document Relates to: *ALL ACTIONS* | Case No.: 3:24-cv-03640-CRB<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: **July 17, 2026**<br>Time: **10:00 AM**<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6, 17th Floor |

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT (CASE NO. 3:24-cv-03640-CRB)

**NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:** PLEASE TAKE NOTICE that on July 17, 2026 at 10:00 AM, or as soon thereafter as the matter may be heard, Lead Plaintiff Richard Rodriguez ("Plaintiff") will move the Honorable Charles R. Breyer, District Judge, located in Courtroom 6, 17th Floor, Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, California 94102, for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") submitted herewith, which: (i) grants preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation of Settlement and exhibits thereto, dated as of May 15, 2026 ("Stipulation"); (ii) preliminarily certifies the Settlement Class, appoints Plaintiff as class representative of the Settlement Class, and appoints Lead Counsel as Class Counsel for the Settlement Class; (iii) approves the form and manner of giving notice of the proposed Settlement to the Settlement Class; (iv) authorizes retention of Strategic Claims Services as the Settlement Administrator; and (v) sets a hearing date to determine whether the proposed Settlement and proposed Plan of Allocation should be approved. In support of this Motion, Plaintiff submits the following memorandum, the declarations and exhibits thereto, including the Stipulation and further exhibits thereto; and such additional information or argument as may be required by the Court.

**TABLE OF CONTENTS**

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT ...................................................................................................................... i

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.  INTRODUCTION ............................................................................................................ 1

II.  SUMMARY OF THE ACTION ....................................................................................... 2

III.  THE SETTLEMENT ........................................................................................................ 3

IV.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........... 5

A.  Legal Standard .................................................................................................... 5

B.  Plaintiff and Lead Counsel Have Adequately Represented the Class ................ 6

C.  The Proposed Settlement Is the Product of Arm's Length Negotiations By Informed Counsel ................................................................................................ 7

D.  The Settlement Provides Fair, Reasonable and Adequate Relief to the Class ........ 8

1.  The Strength of Plaintiff's Case and Risks of Further Litigation Support Preliminary Approval ............................................................................... 8

2.  The Amount of the Settlement Favors Preliminary Approval .................. 11

E.  The Remaining Churchill and Rule 23(e)(2) Factors Support Approval ............. 12

1.  The Experience and Views of Counsel Support Preliminary Approval, Particularly Informed by Extensive Investigation ................................... 12

2.  The Terms of the Proposed Award of Attorneys' Fees Are Reasonable .. 13

3.  The Only Supplemental Agreement Has Been Identified ........................ 15

F.  The Proposed Settlement and Related Submissions are Consistent with the Northern District of California Class Action Guidelines .................................... 15

V.  CERTIFICATION OF THE CLASS IS WARRANTED .................................................. 18

A.  The Settlement Class Satisfies the Requirements of Rule 23(a) .......................... 18

1.  Numerosity ............................................................................................... 19

2.  Commonality ............................................................................................ 19

3.  Typicality ................................................................................................. 20

4.  Adequacy ................................................................................................. 20

B.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ..................... 21

1.  Common Legal and Factual Questions Predominate. .............................. 22

2.  A Class Action is Superior to Other Methods of Adjudication. .............. 22

VI.  THE NOTICE AND NOTICE PLAN WARRANT APPROVAL .................................... 23

VII.  PROPOSED SCHEDULE OF EVENTS ......................................................................... 24

VIII.  CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
 2024 WL 2113745 (S.D.N.Y. Mar. 12, 2024) .........................................................................24

*Amchem Prods., Inc, v. Windsor*,
 521 U.S. 591 (1997)..........................................................................................................20, 21, 23

*Armstrong v. Davis*,
 275 F.3d 849 (9th Cir. 2001) (citation omitted),
 *abrogated on other grounds by*, *Johnson v. California*, 543 U.S. 499 (2005),
 *as recognized in*, *Harris v. Alvarado*, 402 F. App'x 180 (9th Cir. 2010)................................20

*Baron v. Hyrecar Inc.*,
 2025 WL 3097076 (C.D. Cal. Mar. 7, 2025).............................................................................12

*Betorina v. Randstad US, L.P.*,
 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ...............................................................................8

*Bright v. Dennis Garberg & Assocs., Inc.*,
 2011 WL 13150437 (C.D. Cal. Aug. 24, 2011)..........................................................................13

*Churchill Vill., L.L.C. v. Gen. Elec.*,
 361 F.3d 566 (9th Cir.2004) ..................................................................................... *passim*

*Class Plaintiffs v. Seattle*,
 955 F.2d 1268 (9th Cir. 1992) ....................................................................................................5

*Cotter v. Lyft, Inc.*,
 176 F. Supp. 3d 930 (N.D. Cal. 2016) ......................................................................................11

*Cottle v. Plaid Inc.*,
 340 F.R.D. 356 (N.D. Cal. 2021)................................................................................................6

*Davis v. Yelp, Inc.*,
 2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) ......................................................................13, 14

*De La Torre v. CashCall, Inc.*,
 2017 WL 5524718 (N.D. Cal. Nov. 17, 2017) ...........................................................................8

*Desai v. Deutsche Bank Sec. Ltd.*,
 573 F.3d 931 (9th Cir. 2009) ....................................................................................................22

*Fleming v. Impax Labs, Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022)................................................................11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .....................................................................................20

*Hardy v. Embark Tech., Inc.*,
   2023 WL 6276728 (N.D. Cal. Sep. 26, 2023) ..............................................................12

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
   *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020)
   (unpublished) ...........................................................................................................7, 9

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sep. 4, 2018) ..................................................................4

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ...................................................................................5, 16

*Hunt v. Bloom Energy Corp.*,
   2023 WL 7167118 (N.D. Cal. Oct. 31, 2023)................................................................12

*Hunt v. Bloom Energy Corp.*,
   2024 WL 1995840 (N.D. Cal. May 6, 2024) .................................................................14

*In re Aimmune Therapeutics, Inc. Sec. Litig.*,
   2025 WL 2047615 (N.D. Cal. July 18, 2025)................................................................14

*In re Banc of Cal. Sec. Litig.*,
   2020 WL 1283486 (C.D. Cal. Mar. 16, 2020)...............................................................14

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ....................................................................................6, 8

*In re Capacitors Antitrust Litig.*,
   2018 WL 4790575 (N.D. Cal. Sep. 21, 2018) ..............................................................14

*In re Charles Schwab Corp. Sec. Litig.*,
   2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ................................................................9

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770 (N.D. Cal. July 22, 2019).......................................................9, 15, 24

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .....................................................................................20

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT (CASE NO. 3:24-cv-03640-CRB)

*In re Immune Response Sec. Litig.*,
     497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................................17

*In re Nuvelo, Inc. Sec. Litig.*,
     2011 WL 2650592 (N.D. Cal. July 6, 2011) ...............................................................10, 14

*In re Omnivision Techs., Inc.*,
     559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................................13, 15

*In re Pac. Enters. Sec. Litig.*,
     47 F.3d 373 (9th Cir. 1995) ...........................................................................................15

*In re QuantumScape Sec. Class Action*,
     2025 WL 353556 (N.D. Cal. Jan. 22, 2025) ....................................................................14

*In re Seagate Tech. II Sec. Litig.*,
     843 F. Supp. 1341 (N.D. Cal. 1994) ...............................................................................22

*In re Stable Rd. Acquisition Corp.*,
     2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ..................................................................14

*In re SunPower Corp. Sec. Litig.*,
     769 F. Supp. 3d 1042 (N.D. Cal. 2025) ...........................................................................10

*In re Tezos Sec. Litig.*,
     2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ...............................................................14

*In re VeriSign, Inc. Sec. Litig.*,
     2005 WL 7877645 (N.D. Cal. Jan. 13, 2005),
     *amended on other grounds*, 2005 WL 226154 (N.D. Cal. Jan. 31, 2005) ..............................19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
     2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ...................................................................5

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
     2019 WL 2077847 (N.D. Cal. May 10, 2019) ....................................................................6

*In re WorldCom, Inc. Sec. Litig.*,
     219 F.R.D. 267 (S.D.N.Y. 2003) ...............................................................................20, 21

*LaFrano v. loanDepot, Inc.*,
     2023 WL 12023569 (C.D. Cal. Dec. 8, 2023) ..................................................................24

*Lane v. Facebook, Inc.*,
     696 F.3d 811 (9th Cir. 2012) ..........................................................................................23

*Leventhal v. Chegg, Inc.*,
     2025 WL 1481382 (N.D. Cal. May 21, 2025) ..................................................................12

v

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ........................................................................................10

*Luna v. Marvell Tech. Grp.*,
2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ..................................................................9

*Malriat v. QuantumScape Corp.*,
2022 WL 17974629 (N.D. Cal. Dec. 19, 2022) ...............................................................19

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012),
*overruled on other grounds by*, *Olean Wholesale Grocery Coop., Inc. v.*
*Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ....................................................19

*Moore v. Verizon Communs., Inc.*,
2013 U.S. Dist. LEXIS 122901 (N.D. Cal. Aug. 28, 2013)...............................................7

*Nitsch v. DreamWorks Animation SKG Inc.*,
2017 WL 399221 (N.D. Cal. Jan. 19, 2017) ...................................................................12

*Nursing Home Pension Fund v. Oracle Corp.*,
2006 WL 8071391 (N.D. Cal. Dec. 20, 2006) .................................................................19

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
688 F.2d 615 (9th Cir. 1982) ............................................................................................6

*Pitta v. Allen*,
No. 24-cv-06018 (N.D. Cal.) .......................................................................................5, 16

*Plant v. Jaguar Animal Health, Inc.*,
No. 17-cv-4102, ECF No. 97 ..........................................................................................14

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*,
2025 WL 3546227 (N.D. Cal. Dec. 4, 2025) ..................................................................24

*Quiruz v. Specialty Commodities, Inc.*,
2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ..................................................................12

*Razilov v. Nationwide Mut. Ins. Co.*,
2006 WL 3312024 (D. Or. Nov. 13, 2006)......................................................................17

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)............................................................................................20

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........................................................................................7, 9

*Salazar v. Midwest Servicing Grp., Inc.*,
    2018 WL 3031503 (C.D. Cal. June 4, 2018) .............................................................................9

*Sheikh v. Tesla, Inc.*,
    2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) ...........................................................................13

*Todd v. STAAR Surgical Co.*,
    2017 WL 4877417 (C.D. Cal. Oct. 24, 2017)........................................................................8, 17

*Turner v. LTF Club Mgmt. Co.*,
    2025 WL 2533476 (E.D. Cal. Sep. 2, 2025)...........................................................................12

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)..................................................................................................................22

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .................................................................................................14

*Wong v. Arlo Tech., Inc.*,
    2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) .........................................................................12

*Young v. LG Chem Ltd.*,
    783 F. App'x 727 (9th Cir. Sept. 4, 2019) (unpublished)........................................................5

**Statutes**

15 U.S.C. § 78u-4(a)(4) ....................................................................................................................4

Class Action Fairness Act.................................................................................................................6

Exchange Act Sections 10(b) and 20(a)....................................................................................19, 22

Private Securities Litigation Reform Act of 1995 ...............................................................1, 17, 23

Securities Exchange Act of 1934......................................................................................................2

**Rules and Regulations**

17 C.F.R. § 240.10b-5......................................................................................................................2

Fed. R. Civ. P. 23................................................................................................................. *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This proposed Settlement resolves all claims involving Defendant Andrew R. Allen, the former Chief Executive Officer, President, and Director of Gritstone bio, Inc. ("Gritstone" or the "Company") ("Defendant"), and other released persons, in exchange for a non-reverting cash payment of $6,000,000. Lead Plaintiff Richard Rodriguez ("Plaintiff") now requests that the Court preliminarily approve the Settlement.

The Settlement was achieved after nearly two years of highly contested litigation.  During that time, Gritstone declared bankruptcy, the Parties briefed two separate motions to dismiss, and the Parties eventually agreed to engage in an arm's-length mediation session before an experienced mediator.  The mediation and subsequent negotiations overseen by the mediator ultimately resulted in a mediator's proposal to settle all claims for the Settlement Amount, which the Parties accepted.  If approved, the proposed Settlement will recover approximately 7.5% of the maximum estimated damages for the Class—a commendable recovery in the face of significant litigation risks, the wasting nature of Defendant's liability insurance coverage, and the bankruptcy of the Company.  As set forth below, the Settlement falls well within the range of possible approval.

To effectuate the proposed Settlement, Plaintiff also requests certification of a Class for settlement purposes and approval of the form and substance of the Long Notice, Proof of Claim, Summary Notice, Postcard Notice, and Email Notice appended as Exhibits A-1, A-2, A-3, A-4, and A-5, respectively, to the Stipulation of Settlement (the "Stipulation").  Plaintiff also seeks the Court's approval of Strategic Claims Services ("SCS") as Settlement Administrator and the means and methods for disseminating notice of the Settlement, which collectively satisfy due process, the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

Plaintiff respectfully submits that the Settlement meets the standards for preliminary approval because it is likely this Court will be able to find that the Settlement is fair, reasonable, and adequate under Rule 23(e).  By granting preliminary approval, Plaintiff will be able to notify

the Settlement Class, gather claims, and provide an opportunity for Settlement Class Members to submit requests for exclusion and objections, after which the Court will be able to consider whether to finally approve the Settlement.

## II.      SUMMARY OF THE ACTION

The operative Second Amended Complaint ("SAC") asserts claims against Defendant under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, alleging that throughout 2023 and into 2024, Defendant made and authorized materially false and misleading statements concerning Gritstone's capability to produce a vaccine for the U.S. Government's Biomedical Advanced Research and Development Authority ("BARDA") and Gritstone's ability to satisfy its $423 million BARDA contract. ECF No. 88. In particular, the SAC alleges that Defendant misrepresented Gritstone's compliance with current Good Manufacturing Practices ("cGMP"), the Company's capabilities to satisfy the BARDA contract, and the timeline for launching the CORAL Phase 2b clinical trial. ECF No. 88.

Plaintiff filed his initial complaint on June 17, 2024, and following appointment as Lead Plaintiff, filed a First Amended Complaint on December 9, 2024 against Defendant Allen and former Chief Financial Officer Vassiliki Economides. ECF No. 47. On July 24, 2025, the Court granted Defendants' motions to dismiss the First Amended Complaint, dismissing with prejudice as to Ms. Economides and without prejudice as to Defendant Allen. ECF No. 86. The Court concluded that the First Amended Complaint failed to allege that the challenged statements were materially false or misleading when made, with the exception of certain pre-BARDA statements relating to Gritstone's manufacturing practices, and failed to allege scienter with respect to Allen. The Court granted leave to amend the complaint. *Id.* at 11. On August 21, 2025, Plaintiff filed the SAC, which asserts Section 10(b) and Section 20(a) claims against Defendant Allen on behalf of investors who purchased or otherwise acquired Gritstone securities between March 9, 2023 and April 2, 2024, both dates inclusive. ECF No. 88. The SAC supplemented the prior pleadings with additional allegations from six confidential witnesses, including the former Director of Quality

2

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 3:24-cv-03640-CRB)

Assurance who led Gritstone's internal cGMP task force throughout 2023. Defendant filed a motion to dismiss the SAC, which was fully briefed.

On April 22, 2026, the Parties participated in an all-day mediation session presided over by experienced mediator Jed Melnick, Esq. of JAMS. In advance of the mediation, the Parties submitted and exchanged detailed mediation statements and exhibits, which addressed, among other things, issues relating to liability and damages. On April 22, 2026, the Parties accepted the mediator's proposal to settle the Action and release all claims asserted against Defendant in exchange for an all-cash payment of $6,000,000, subject to the additional conditions identified in the Stipulation, including approval by the United States Bankruptcy Court for the District of Delaware of the payment by Defendant's insurers of the Settlement Amount. The Parties then negotiated the additional terms reflected in the executed Memorandum of Understanding dated April 24, 2026, and ultimately the Stipulation.

## III.  THE SETTLEMENT

The Settlement requires Defendant to direct his insurers to cause the payment of $6,000,000 into an Escrow Account, which amount, plus interest that accrues thereon, comprises the Settlement Fund. Stipulation ¶6. Costs of notice to the Settlement Class and settlement administration ("Settlement Administration Costs") will be paid from the Settlement Fund. Plaintiff proposes that SCS, a nationally recognized class action settlement administrator, be retained subject to the Court's approval. SCS was selected following a competitive bidding process and careful review of proposals from several reputable settlement administrators. After reviewing the bids from each administrator, Lead Counsel concluded that SCS, because of its experience, the estimated cost, and the quality of its work in prior engagements for Lead Counsel, was best suited to administer the settlement of this Action. Lead Counsel respectfully requests that the Court approve its selection. Further information regarding SCS, its processes, security measures, and anticipated claims rates is provided in the Declaration of Paul Mulholland, an executive of SCS, submitted herewith.

The proposed notice plan and plan for claims processing is discussed below in § VI, and in the Declaration of Paul Mulholland. The Long Notice, Postcard Notice, Email Notice, and Summary Notice inform Settlement Class Members that Lead Counsel will move for final approval of the Settlement and: (a) an award of attorneys' fees in the amount of no more than one-third of the Settlement Fund; (b) payment of expenses or charges resulting from the prosecution of the Action (including an award to Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(4) for his time and expenses incurred in representing the Settlement Class) not to exceed $500,000; and (c) interest on such fees and expenses at the same rate and for the same period as is earned by the Settlement Fund. The Long Notice explains that such fees and expenses shall be paid from the Settlement Fund.

Once Settlement Administration Costs, Taxes, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining Net Settlement Fund shall be distributed pursuant to the Court-approved Plan of Allocation (set forth in the Long Notice) to Authorized Claimants who are entitled to a distribution of at least $10.00. Any amount remaining following the distribution shall be redistributed in an economically feasible manner. The Plan of Allocation treats all Settlement Class Members equitably based on the timing and amount of their transactions. The Parties have entered into a Supplemental Agreement, which provides that if requests for exclusion from the Settlement Class by persons who would otherwise be Settlement Class Members exceeds a certain threshold, Defendant shall have the option (but not the obligation) to terminate the Settlement. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sep. 4, 2018).

In exchange for the Settlement consideration, Settlement Class Members will release all known or unknown claims that (i) are or have been asserted in any complaint in this Action or (ii) relate to the facts alleged in such complaints and to the sale or purchase of Gritstone securities by Settlement Class Members. Because the scope of the release "is limited to claims that relate to both the complaint's factual allegations and to the purchase or ownership of" the Gritstone

securities in question, it "ensure[s] that the released claims are based on the identical factual predicate as that underlying the claims in the settled class action." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2018 WL 6198311, at *5 (N.D. Cal. Nov. 28, 2018) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). Notably, the release expressly carves out the claims asserted in *Pitta v. Allen*, No. 24-cv-06018 (N.D. Cal.) (the "Pitta Action"), so this Settlement does not affect that pending derivative-style action by the Gritstone bankruptcy estate. Lastly, under the terms of the Stipulation, there is no clear sailing agreement or reversion to Defendant.

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Legal Standard

The Ninth Circuit has repeatedly noted that there is a strong judicial policy "that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Young v. LG Chem Ltd.*, 783 F. App'x 727, 737 (9th Cir. Sept. 4, 2019) (unpublished) (same).

Federal Rule of Civil Procedure 23(e) requires judicial approval for settlement of claims brought as a class action. Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a proposed class settlement may be approved "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this assessment, the Court must consider whether Plaintiff and Plaintiff's Counsel: (i) "have adequately represented the class;" (ii) "the proposal was negotiated at arm's length;" (iii) "the relief provided for the class is adequate;" and (iv) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). The Ninth Circuit also uses the following "*Churchill* factors" for preliminary approval, several of which overlap with Rule 23(e)(2):

> the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004)).  "The relative degree of importance to be attached to any particular factor will depend upon the unique facts and circumstances presented by each individual case." *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 372 (N.D. Cal. 2021) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (discussing both the *Churchill* factors and Rule 23(e)(2) requirements)).

All factors applicable at this stage support a finding that the Settlement is likely to be approved after the Settlement Hearing.[1]

### B.    Plaintiff and Lead Counsel Have Adequately Represented the Class

Rule 23(e)(2)'s first two factors look "to the conduct of the litigation and of the negotiations leading up to the proposed settlement."  Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory committee's notes to 2018 amendments.  This Settlement bears all of the hallmarks of a procedurally fair resolution.   Rule 23(e)(2)(A) asks whether the plaintiff and his counsel have adequately represented the class.  This factor overlaps with the Ninth Circuit's *Churchill* factor regarding "the extent of discovery completed and the stage of the proceedings."  As explained above, Plaintiff and Lead Counsel satisfy this factor as they have diligently prosecuted this Action for over two years.  They have succeeded in investigating the underlying claims, including interviews with numerous former employees, expanding liability by expanding the class period, and partially defeating Defendants' motion to dismiss.  Given Plaintiff's and Class Counsel's zealous prosecution of the Action, it is without question that they have adequately represented the Class. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (finding securities class settlement to be procedurally

---

[1] The final two *Churchill* factors are not applicable at this stage, because there is no governmental participant (and notice under the Class Action Fairness Act has not yet issued to governmental entities) and class members have yet to receive notice of the settlement.

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 3:24-cv-03640-CRB)

fair where "Lead Counsel vigorously litigated this action during motion practice"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6, 6 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (unpublished).

"[T]he class representative[] and class counsel must have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). To demonstrate adequacy, a court will examine whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (citation omitted), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). Both elements are satisfied here.

Lead Counsel, an experienced firm in securities class actions, has prosecuted this Action vigorously, conducting an extensive pre-suit investigation that included interviews of former employees of Gritstone, retaining a damages expert and consultants, drafting two amended complaints, and opposing aspects of two motions to dismiss. Lead Counsel further demonstrated its commitment by securing the meaningful Settlement now before the Court despite the wasting D&O insurance tower, the Company's bankruptcy, and a fully-briefed motion to dismiss. There is no conflict between Plaintiff and the Settlement Class. Plaintiff purchased Gritstone securities during the Class Period and suffered losses from the same alleged misconduct as the Settlement Class. *Id.* Plaintiff's claims are typical of the claims of Settlement Class Members and Plaintiff seeks the same remedies.

**C.    The Proposed Settlement Is the Product of Arm's Length Negotiations By Informed Counsel**

The proposed settlement is also the result of extensive adversarial litigation and arm's-length negotiations facilitated by a neutral mediator. The Ninth Circuit and district courts within this circuit, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Moore v. Verizon*

*Communs., Inc.*, 2013 U.S. Dist. LEXIS 122901, *32 (N.D. Cal. Aug. 28, 2013) (citing *Bluetooth*, 654 F.3d at 948 (mediator is "a factor weighing in favor of a finding of non-collusiveness.").

"The Settlement here is the product of vigorous arm's-length negotiations between counsel for the Parties. The Parties were represented by experienced counsel "well-positioned to evaluate the strengths and weaknesses of" [their] case[s]" when they entered into the Settlement. *De La Torre v. CashCall, Inc.*, 2017 WL 5524718 (N.D. Cal. Nov. 17, 2017). As discussed above, the Settlement was reached only after a full-day mediation session under the supervision of an experienced mediator and after extensive subsequent negotiations, ultimately resulting in a mediator's proposal accepted by both Parties. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (citation omitted).

Here, through the mediation process, the strengths and weaknesses of the Parties' claims and defenses were extensively debated. The Parties reached a settlement only after a mediator's proposal was evaluated and ultimately accepted by the Parties after several weeks of arm's-length negotiation and in consultation with experts. None of the indicia of collusion were present. *Bluetooth*, 654 F.3d at 947. A reasonable fee will be sought, *infra* §E(2); the Class will receive the majority of the Settlement Amount as a monetary distribution; no *cy pres* is anticipated; there is no "clear sailing" arrangement; any remaining funds (for example from uncashed checks) will not revert to Defendant; and the Plan of Allocation calls for the Net Settlement Fund to be allocated to Plaintiff and other Settlement Class Members pursuant to the same formula. In short, the Settlement is fair, reasonable, adequate, and a product of arm's-length negotiations.

**D.    The Settlement Provides Fair, Reasonable and Adequate Relief to the Class**

**1.    The Strength of Plaintiff's Case and Risks of Further Litigation Support Preliminary Approval**

Rule 23(e)(2)(C)(i) and the first three *Churchill* factors concern the "strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and the specific risks related to class certification. These factors are often considered together. *Betorina*

8

*v. Randstad US, L.P.*, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017). Here, they unquestionably support preliminary approval.

Securities cases, like the present one, "'are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'" *Hefler*, 2018 WL 6619983, at *13. "[P]rosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential recovery." *See, e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (noting that "Securities actions, in particular are often long, hard-fought, complicated, and extremely difficult to win" facing "obstacles includ[ing] challenges to the material falsity of each alleged misstatement, class certification challenges, loss causation and damages challenges, and the risks inherent in a 'battle of the experts' of complex economic theories in a jury trial"). The Settlement eliminates the risks of continued litigation, which warrants preliminary approval.

While Plaintiff remains confident in his ability to ultimately prove the alleged claims, further litigation—including a trial—is always a risky proposition. *See, e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (A "settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval"). To start, Defendant has vigorously argued that he made no misrepresentations, and he did not act with scienter. Risks of proving falsity and scienter will pose obstacles at summary judgment or trial. *See, e.g.*, *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018) (noting the risks of proving scienter, loss causation, and damages at trial). If Defendant prevailed on any of his various arguments, damages would be substantially reduced or eliminated. Further, even if Plaintiff won at trial, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez*, 563 F.3d at 966.

Although Plaintiff is confident in the merits of his claims, this Action faced significant risk and uncertainty. Most notably, Defendant's motion to dismiss the SAC was fully briefed and pending before the Court at the time the Settlement was reached. Although the Court previously

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 3:24-cv-03640-CRB)

held that the original complaint adequately alleged that "Gritstone's contractors did not comply with good manufacturing practices, contrary to Gritstone's representations," the Court dismissed the prior complaint without prejudice as to scienter, and Defendant argued that the SAC failed to cure the scienter deficiencies. Even assuming Plaintiff prevailed on the motion to dismiss, the Action faced additional substantial hurdles, including class certification, summary judgment, the development of an evidentiary record showing scienter, and the establishment of loss causation as to multiple corrective disclosure dates with confounding information. In particular, for loss causation, the most significant single-day price drop during the Class Period—the 48.94% decline on April 1–2, 2024—occurred contemporaneously with mixed preliminary results from Gritstone's GRANITE Phase 2/3 oncology trial and an emergency dilutive public offering. Defendant thus argued that the entire 48.94% decline was attributable to the GRANITE data and the dilutive offering, not to any concealed fraud regarding the CORAL Phase 2b trial or the BARDA contract. Plaintiff disputed that contention vigorously, but resolution of the dispute would have required expert disaggregation of confounding information at trial, with significant uncertainty as to the result. *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) (confounding information goes to damages allocation but does not defeat loss causation as a legal matter).

The settlement here also avoids the substantial risks posed by Gritstone's bankruptcy and the wasting nature of Defendant's liability insurance coverage. Gritstone declared Chapter 11 bankruptcy on October 10, 2024, leaving Defendant's liability insurance as the only meaningful source of recovery. That coverage is a finite, wasting asset, and every additional month of litigation depletes available limits through ongoing defense costs. Were litigation to continue, the available recovery for the Class would have shrunk materially. *See, e.g.*, *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *1–2 (N.D. Cal. July 6, 2011) (approving settlement reflecting recovery of approximately 2% of damages against insolvent defendant); *In re SunPower Corp. Sec. Litig.*, 769 F. Supp. 3d 1042, 1053-54 (N.D. Cal. 2025) (recognizing similar dynamics where defendant company's August 2023 "going concern" warning preceded subsequent bankruptcy).

The third *Churchill* factor, concerning the risk of maintaining class certification, also favors approval. Lead Plaintiff was prepared to move for class certification if his claims were upheld against Defendant's motion to dismiss and believes he could satisfy the requirements for certification. However, even if a class was initially certified, Defendant could have moved to decertify or shorten the Class Period. *See, e.g.*, *Fleming v. Impax Labs, Inc.*, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) ("[T]here is always a risk of decertification—especially when, as here, Plaintiffs must overcome causation and damages defenses."). Accordingly, this factor supports preliminary approval.

In sum, given the substantial litigation risks attendant to continued prosecution, the significant possibility of recovering nothing, and the rapid depletion of Defendant's liability insurance limits, the proposed Settlement is fair, reasonable, and adequate.

### 2.    The Amount of the Settlement Favors Preliminary Approval

Courts in this district "have stated that the relevant inquiry is whether the settlement falls within the range of possible approval or within the range of reasonableness." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016). Here, the Settlement Amount of $6,000,000 represents an excellent result, particularly when considered in light of the risks of further litigation, the wasting nature of Defendant's liability insurance, and Gritstone's bankruptcy. The proposed Settlement is fair compared to other recent settlements when expressed as a percentage of Plaintiff's estimated potential damages.

The likely amount Plaintiff could have recovered at trial, after considering legal and factual challenges to several allegedly false statements, depends on which of the alleged corrective disclosures are credited and how confounding information on April 1–2, 2024 is disaggregated. Plaintiff's damages expert estimates that the maximum aggregate damages potentially recoverable at trial total approximately $80,000,000. Therefore, the $6,000,000 Settlement represents approximately 7.5% of the maximum estimated damages. These figures readily support preliminary approval.

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT (CASE NO. 3:24-cv-03640-CRB)

Securities class actions routinely settle for percentages comparable to or below those obtained here. *See Hunt v. Bloom Energy Corp.*, 2023 WL 7167118, at *7 (N.D. Cal. Oct. 31, 2023) (granting preliminary approval to settlement representing 5.2% of maximum estimated damages); *Leventhal v. Chegg, Inc.*, 2025 WL 1481382, at *7, *10 (N.D. Cal. May 21, 2025) (granting final approval to settlement representing 3.9% of maximum estimated damages); *Turner v. LTF Club Mgmt. Co.*, 2025 WL 2533476, at *14 (E.D. Cal. Sep. 2, 2025) (settlement representing 2.3% of maximum estimated damages); *Wong v. Arlo Tech., Inc.*, 2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021) (settlement of 2.35% of total damages "weighs in favor of approval"); *Hardy v. Embark Tech., Inc.*, 2023 WL 6276728, at *8 (N.D. Cal. Sep. 26, 2023) (granting preliminary approval to settlement recovering 1.1% of maximum damages); *Baron v. Hyrecar Inc.*, 2025 WL 3097076, at *7 (C.D. Cal. Mar. 7, 2025) (2% recovery of potential damages preliminarily approved).

In sum, Plaintiff respectfully submits that the $6,000,000 Settlement Amount obtained here, after a difficult mediation in the face of strong potential defenses, an active motion to dismiss, a wasting D&O insurance tower, and the bankruptcy of the Company, represents an excellent recovery that readily supports preliminary approval.

**E.      The Remaining Churchill and Rule 23(e)(2) Factors Support Approval**

**1.       The Experience and Views of Counsel Support Preliminary Approval, Particularly Informed by Extensive Investigation**

It is well-settled that courts grant "considerable weight" to the opinion of experienced counsel supporting settlement after legitimate, arm's-length negotiation. *See Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020) (citation omitted). Here, Plaintiff is represented by experienced counsel who focus their practices on securities litigation and have negotiated numerous other substantial class action settlements nationwide. Throughout the Action and settlement negotiations, Defendant was zealously represented by experienced counsel at Fenwick & West LLP. Such representation dispels any suggestion that the settlement process was infected with collusion or was otherwise procedurally defective. *See Nitsch v.*

*DreamWorks Animation SKG Inc.*, 2017 WL 399221, at \*2 (N.D. Cal. Jan. 19, 2017) (granting preliminary approval following "arm's length negotiations among experienced counsel").

At the time of the mediation, Lead Counsel had a firm understanding of the legal and factual strengths and weaknesses of the claims, having conducted extensive investigation over two amended complaints and a thorough analysis of Defendant's arguments in two corresponding motions to dismiss. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).[2] Prior to the mediation, Lead Plaintiff and his counsel oversaw an extensive private investigation involving the interviews of six former Gritstone employees and consulted with damages experts. Thus, they had more than adequate information to "reasonably evaluate their . . . positions" in mediation. *Bright v. Dennis Garberg & Assocs., Inc.*, 2011 WL 13150437, at \*2 (C.D. Cal. Aug. 24, 2011); *Sheikh v. Tesla, Inc.*, 2018 WL 5794532, at \*5 (N.D. Cal. Nov. 2, 2018) (approving settlement where "[l]ittle formal discovery had been completed at the time of settlement" but lead plaintiffs' counsel had conducted pre-suit investigation, filed two amended pleadings, and obtained informal discovery) . This *Churchill* factor also weighs in favor of preliminary approval.

**2.    The Terms of the Proposed Award of Attorneys' Fees Are Reasonable**

Although no fee request has yet been submitted, the proposed Long Notice informs Settlement Class Members that Lead Counsel may file a fee request for up to one-third of the Settlement Fund. Attorneys' fees of up to one-third of the Settlement Fund can be "justified by the positive result obtained, the contingent fee risk, the hours dedicated, the financial commitment, and the important public policy advanced by securities litigation." *Davis v. Yelp, Inc.*, 2023 WL 3063823, at \*2 (N.D. Cal. Jan. 27, 2023). While the Ninth Circuit's benchmark is 25% of the fund, "a larger award of 33% is warranted because counsel risked significant amounts of their own funds and dedicated time and effort to litigate." *Id.*

---

[2] This analysis is consistent with the first two factors listed in Rule 23(e)(2), which examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)–(B) advisory committee's notes to 2018 amendments.

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT (CASE NO. 3:24-cv-03640-CRB)

As set forth in the Long Notice, Lead Counsel intends to move for attorneys' fees for all Plaintiff's Counsel of no more than one-third of the Settlement Fund, plus expenses not to exceed $500,000. This anticipated fee request is well supported by "(1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in comparable cases." *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *3 (N.D. Cal. Sep. 21, 2018) (citing the Ninth Circuit's *Vizcaino* factors, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)).

As discussed herein, Plaintiff's Counsel faced considerable risk of nonrecovery and achieved an excellent result for the Settlement Class warranting a fee award exceeding the Ninth Circuit's 25% benchmark. In *Vizcaino*, the Ninth Circuit noted that among other factors, "exceptional results" and "risk" are "relevant circumstances" which may support a percentage recovery in excess of the benchmark. *Vizcaino*, 290 F.3d at 1047–48. *See, e.g.*, *Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *5–8 (N.D. Cal. May 6, 2024) (awarding 30% of the common fund in a securities class action settlement); *Nuvelo*, 2011 WL 2650592, at *1–2 (awarding 30% in a securities class action against insolvent defendant). Indeed, courts have found that, "in most common fund cases, the award exceeds that benchmark," especially in "securities class actions." *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *13–14 (C.D. Cal. Apr. 23, 2024) (citations omitted); *see also In re Aimmune Therapeutics, Inc. Sec. Litig.*, 2025 WL 2047615, at *1 (N.D. Cal. July 18, 2025) (approving one-third of $27.5 million settlement); *In re QuantumScape Sec. Class Action*, 2025 WL 353556, at *5 (N.D. Cal. Jan. 22, 2025) (awarding 30% of $47.5 million resolution); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding one-third of $25 million settlement); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement). Accordingly, the fee request for one-third of the Settlement Fund here falls within the range of reasonable awards allowed in this Circuit. *See, e.g.*, *Yelp*, 2023 WL 3063823, at *2 (awarding 33% of $22.25 million settlement in securities case); *Plant v. Jaguar Animal Health, Inc.*, No. 17-cv-

4102, ECF No. 97 ¶ 3 (N.D. Cal. May 27, 2021) (awarding 33% of $2.6 million settlement); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33% of $12 million settlement).

As Lead Counsel will further demonstrate in its final motion for an award of attorneys' fees, the requested one-third of the Settlement Fund is warranted under the circumstances of the case. In addition, the Long Notice informs Settlement Class Members that Lead Counsel plans to seek Litigation Expenses not to exceed $500,000. These expenses will be itemized in Plaintiff's Fee and Expense Application. The amount of these expenses is in line with those commonly approved in this District, and the expenses relate to commonly reimbursed items such as expert costs, investigation costs, and mediation fees. *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1039, 1048-49 (approving litigation costs of $560,489.90, plus interest, from settlement amount of $13,750,000).[3]

### 3. The Only Supplemental Agreement Has Been Identified

Rule 23(e)(2)(C)(iv) and Rule 23(e)(3) require identification of any other agreement made in connection with the proposed Settlement. Here, the only such agreement is a standard agreement pertaining to potential opt-outs. The Supplemental Agreement is being executed concurrently with the Stipulation and is not being filed with the Court, in keeping with standard practice.

### F. The Proposed Settlement and Related Submissions are Consistent with the Northern District of California Class Action Guidelines

Plaintiff has complied with the Northern District of California's Procedural Guidance for Class Action Settlements in documenting the Stipulation and Long Notice, and preparing these moving papers. Specific considerations are discussed in more detail below.

---

[3] Plaintiff also intends to seek reasonable reimbursement for the time and expenses incurred by Plaintiff in an amount not exceeding $5,000. Such awards have regularly been granted in this District. *See, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *11 (N.D. Cal. July 22, 2019) ("Service awards as high as $5,000 are presumptively reasonable in this judicial district.").

**There is no difference between the Settlement Class and the class identified in the SAC.** The Settlement Class defined in the proposed Settlement is consistent with the class and claims identified in the operative SAC.

**The scope of the releases is consistent with the SAC.** The Stipulation provides for Plaintiff and Settlement Class Members to release "Released Plaintiff's Claims" as against "Released Defendant's Parties." *See* Stipulation ¶¶3-4. The Released Plaintiff's Claims include claims "(i) asserted in the Action; or (ii) could have asserted in any forum that arise out of or are based upon both (a) the allegations, transactions, facts, matters or occurrences, representations, or omissions set forth, or referred to, in the Action, and (b) the purchase of Gritstone's publicly traded securities during the Settlement Class Period." This release is no broader than the factual predicate of the underlying claims, and consistent with this Circuit's precedent. *See, e.g.*, *Hesse*, 598 F.3d at 590 ("[F]ederal district courts properly released claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement.").

**Class recovery relative to potential recovery for each claim.** The recovery of $6,000,000 compares favorably with Plaintiff's estimation of the aggregate potential recovery of damages, representing approximately 7.5% of the maximum estimated damages.

**Other cases that may be affected.** The Stipulation expressly excludes from the release the claims asserted in *Pitta v. Allen*, No. 24-cv-06018 (N.D. Cal.), so the Settlement does not affect that pending action. The Parties are unaware of any other case that will be affected.

**The claim form and anticipated rate.** Based on prior experience in comparable securities class action cases in which Class Counsel has utilized the proposed Settlement Administrator, the Settlement Administrator estimates that approximately 30% of potential Settlement Class Members to whom notice is mailed or emailed will submit a claim. That is consistent with Class Counsel's experience. Submitted claims will then be reviewed for validity and documentation.

**Reversion and Cy Pres.** Once final, the Stipulation provides that the proposed Settlement will not revert to Defendant. The Net Settlement Fund will be distributed (and any remaining

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT (CASE NO. 3:24-cv-03640-CRB)

amounts, for example from unclaimed checks, redistributed if feasible) to Settlement Class Members, and no cy pres request is expected to be made.

**Class Counsel's anticipated attorneys' fee request is reasonable.**  Class Counsel will seek a one-third fee, and reimbursement of reasonable litigation expenses, together with any interest accrued on such amounts.

**Plaintiff's anticipated service award request is reasonable.**  Pursuant to the PSLRA (15 U.S.C. §§ 77z-1(a)(4) and 78u-4(a)(4)), Class Counsel will seek an award on behalf of Plaintiff to recover unreimbursed costs (including the cost of time spent) for the work and time he devoted to benefit the Settlement Class.  The Long Notice informs Settlement Class Members this request will not exceed $5,000.  Plaintiff devoted extensive time and effort on behalf of the Class, including: (i) reviewing the original complaint, the First Amended Complaint, and the Second Amended Complaint, and providing feedback to counsel; (ii) regularly communicating with counsel regarding case strategy; (iii) reviewing and discussing motion papers with counsel; (iv) reviewing and discussing Court orders with counsel; (v) meeting with counsel to discuss class and representative obligations; (vi) discussing with counsel the damages estimated by experts; (vii) discussing mediation strategy with counsel; and (viii) conferring with counsel regarding settlement proposals, including the mediator's proposal resulting in the Settlement.  The amount is well below reimbursement awards in similar cases.  *E.g.*, *Todd*, 2017 WL 4877417, at *6 ($10,000); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173–74 (S.D. Cal. 2007) ($40,000); *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024, at *1 (D. Or. Nov. 13, 2006) ($10,000 incentive awards to class representatives).

**Form of notice is appropriate.**  The use of the full Long Notice, the published summary notice in *Investor's Business Daily* and *PR Newswire*, postcard notice, online claims forms, and a website for the settlement are appropriate, given the email addresses and social media accounts of investors are not readily available.  Where practicable, however, the Claims Administrator will disseminate notice by email. Use of online claims is appropriate in securities class action settlements due to the volume of data necessary to adjudicate and validate eligible claims.  Most

claims in securities class actions are filed by third-party filers on behalf of institutional investors. These claimants can have tens of thousands (or even millions) of transactions in a security during the class period. The ability to file claims electronically via the settlement website portal reduces the potential for errors, creates administrative efficiency and, ultimately, provides substantial cost savings to the Settlement Class. An opt-out form is not required, as the Notice provides instructions that satisfy due-process requirements and afford Settlement Class Members a meaningful opportunity to exclude themselves. In addition, providing notice in the English language is appropriate in this case given that Gritstone was a U.S.-based company that traded on a U.S. exchange. While foreign investors may be eligible to participate, the majority of Settlement Class Members will be sophisticated institutional investors likely to be fluent in English.

**Filing claims is appropriate.** The Settlement requires Settlement Class Members to file claims, as opposed to automatically receiving checks, to confirm the identities of the Settlement Class Members and to prevent fraud. In addition, it is necessary for Settlement Class Members to file Claims because the awards are based on trading data, and the Claims Administrator does not have that trading data unless provided by the Settlement Class Member.

**The Settlement is supported by comparable outcomes.** Consistent with the Procedural Guidance, the Lieberman Declaration contains a comparable case analysis.

**The Notice contains the information required by Procedural Guidance.** *See infra* at Section VI.

## V.     CERTIFICATION OF THE CLASS IS WARRANTED

For purposes of settlement, Plaintiff seeks conditional certification of the Settlement Class to effectuate the Settlement under Federal Rules 23(a) and (b)(3). As demonstrated below, the proposed Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3).

### A.     The Settlement Class Satisfies the Requirements of Rule 23(a)

In order for a class action to be certified, the following requirements must be met pursuant to Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").  *See* Fed. R. Civ. P. 23(a).

### 1.    Numerosity

To meet the numerosity requirement, the class representative need only demonstrate that it is difficult or inconvenient to join all members of the class, who may be geographically dispersed. *Nursing Home Pension Fund v. Oracle Corp.*, 2006 WL 8071391, at *2 (N.D. Cal. Dec. 20, 2006). During the Settlement Class Period, millions of shares of Gritstone's common stock traded on Nasdaq.  Therefore, the Court may reasonably conclude that the numerosity requirement has been satisfied.  *Malriat v. QuantumScape Corp.*, 2022 WL 17974629, at *3 (N.D. Cal. Dec. 19, 2022) ("[C]ourts may infer that, when a corporation has millions of shares trading on a national exchange, the numerosity requirement is met." (citation modified)); *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *4 (N.D. Cal. Jan. 13, 2005) (similar), *amended on other grounds*, 2005 WL 226154 (N.D. Cal. Jan. 31, 2005).

### 2.    Commonality

In order for a class to be certified, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The commonality prerequisite has generally been liberally construed, requiring only a minimum of one issue common to all class members.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012), *overruled on other grounds by*, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

This case presents numerous common questions of law and fact, including: (i) whether Defendant violated Sections 10(b) and 20(a) of the Exchange Act; (ii) whether statements made by Defendant to the investing public during the Settlement Class Period misrepresented material facts; (iii) whether Defendant's alleged misconduct impacted the prices of Gritstone common stock; and (iv) whether the members of the Settlement Class have sustained damages and, if so, the appropriate measure of damages.  Thus, the commonality requirement is met.

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 3:24-cv-03640-CRB)

### 3.    Typicality

The "typicality" prong is met where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted), *abrogated on other grounds by*, *Johnson v. California*, 543 U.S. 499, 504-05 (2005), *as recognized in*, *Harris v. Alvarado*, 402 F. App'x 180, 181 (9th Cir. 2010).  The claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Rather, so long as "the disputed issue of law or fact occupies essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (citation omitted), "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims," *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

Here, the claims of both Plaintiff and Settlement Class Members arise from the same set of circumstances—*i.e.*, whether statements made by Defendant to the investing public during the Settlement Class Period misrepresented material facts about Gritstone's cGMP compliance, the BARDA contract, and the timeline for launching the CORAL Phase 2b clinical trial.  Plaintiff's claims are therefore predicated on the same or similar legal theories as those of the other Settlement Class Members.  Further, the proof that Plaintiff would present to establish his claims would also prove the claims of the rest of the Settlement Class.  The typicality prong has therefore been met.

### 4.    Adequacy

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc, v. Windsor*, 521 U.S. 591, 625 (1997). The factors to determine adequacy are: (a) the absence of potential conflicts between the named plaintiff(s) and their counsel with other class members; and (b) counsel chosen by the representative plaintiff(s) is qualified, experienced and able to vigorously conduct the litigation. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019).

Plaintiff purchased Gritstone common stock during the Class Period and allegedly suffered losses as a result of the same course of conduct that allegedly injured other Settlement Class Members. Therefore, Plaintiff's interests in demonstrating Defendant's liability and maximizing possible recovery are aligned with the interests of the absent members. *E.g.*, *WorldCom*, 219 F.R.D. at 282 ("named plaintiffs' interests are directly aligned with those of the absent class members: they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments"). Further, Plaintiff has no interests antagonistic to the interests of other Settlement Class Members.

As for the adequacy of class counsel, a court must consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A) . Here, Pomerantz LLP is highly experienced in litigating securities class actions and will fairly and adequately prosecute the claims of the Settlement Class. Pomerantz has further demonstrated its adequacy by the substantial work undertaken in prosecuting this Action, including: (i) extensively investigating and drafting the SAC and prior pleadings; (ii) hiring and working with damages experts and private investigators; and (iii) successfully reaching a favorable Settlement. In view of these facts, Plaintiff should be appointed Class Representative, and Lead Counsel should be appointed Class Counsel.

### B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Certification under Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The court may consider that the class will be certified for settlement purposes only, and thus a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618.

### 1. Common Legal and Factual Questions Predominate.

Here, questions common to all Settlement Class Members substantially predominate over any individualized questions. Such common issues are (i) whether Defendant violated Sections 10(b) and 20(a) of the Exchange Act; and (ii) whether the alleged material misrepresentations and omissions caused recoverable losses. As set forth above, "the common, aggregation-enabling issues in the case are *more prevalent or important* than" any non-common, individual issues. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation modified). Therefore, the predominance requirement of Rule 23(b)(3) is met.

### 2. A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). In securities cases predicated on false or misleading statements that were disseminated to numerous shareholders, class actions are superior to other methods of adjudication because they promote judicial economy. *See Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 937 (9th Cir. 2009); *In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1351–52 (N.D. Cal. 1994).

In this case, the Stipulation provides Settlement Class Members with the ability to obtain prompt and certain relief through well-defined administrative procedures assuring due process. This includes the right of any Settlement Class Member dissatisfied with the Settlement to object to it, or to exclude themselves from the Settlement Class. The Settlement also relieves the substantial judicial burdens that would result from repeated adjudication of the same issues in hundreds to thousands of individualized trials against Defendant, by affording settlement relief to the Settlement Class through certification as a class action. Since the parties seek to resolve this Action through a settlement, any manageability issues that could have arisen at trial are irrelevant.

*See Amchem*, 521 U.S. at 620. Finally, the complexity of the claims asserted against Defendant and the high cost of individualized litigation make it unlikely that the vast majority of Settlement Class Members would be able to obtain relief without class certification. For all the reasons mentioned, a class action is a superior method of adjudication for this litigation.

## VI.    THE NOTICE AND NOTICE PLAN WARRANT APPROVAL

The Federal Rules require "the best notice that is practicable under the circumstances," and that such notice be directed "in a reasonable manner to all class members who would be bound by the [settlement]." Fed. R. Civ. P. 23(c)(2)(B), (e)(1)(B). Notices "must generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (citation omitted).

In this case, the Long Notice—attached as Exhibit A-1 to the Stipulation—includes all information required by the Federal Rules of Civil Procedure, the PSLRA, and is informed by the Northern District of California's Procedural Guidance for Class Action Settlements. In particular, the Long Notice describes in plain English the proposed Settlement's terms, as well as: (i) the purpose of the Long Notice; (ii) a summary of the claims resolved by the Long Notice; (iii) a statement of the recovery for the Settlement Class; (iv) an estimate of the average recovery per share; (v) a statement of the potential outcome of the case if litigation were to continue; (vi) reasons for settlement; (vii) an estimate of the maximum amount of attorneys' fees and expenses that Lead Counsel will seek on behalf of Plaintiff's Counsel; (viii) a summary of Settlement Class Members' legal rights and options related to the Settlement; (ix) the terms of the Plan of Allocation; (x) the date, time, and location of the Settlement Hearing; and (xi) additional frequently asked questions and answers related to the Settlement. Importantly, the Long Notice also sets forth the Class Members' rights to: (i) request exclusion from the Settlement Class, and how to do so; (ii) object to the Settlement, Plan of Allocation, and/or Fee and Expense Application, or any aspects thereof, and how to do so; and (iii) submit a Proof of Claim to participate in the Settlement, and instructions

on how to complete and submit a Proof of Claim. The Long Notice also provides contact information for Lead Counsel and the Settlement Administrator.

Consistent with Rule 23(h)(1), the Long Notice informs Class Members that Class Counsel will apply to the Court for attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of expenses of not more than $500,000 from the Settlement Fund, as well as a modest award of up to $5,000 to compensate Plaintiff for the time spent working with counsel throughout the litigation. Following the Court's ruling on the present motion and authorization of notice, the Settlement Administrator will post copies of all notices and Settlement-related motions and orders on the case website, www.strategicclaims.net/Gritstone/.

Plaintiff's proposed method for disseminating notice to the Class—Postcard Notice, Email Notice, publication, and website—satisfies all applicable standards. *Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2025 WL 3546227, at *3–4 (N.D. Cal. Dec. 4, 2025); *LaFrano v. loanDepot, Inc.*, 2023 WL 12023569, at *11-12(C.D. Cal. Dec. 8, 2023); *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 2024 WL 2113745, ¶¶ 6-12 (S.D.N.Y. Mar. 12, 2024); *Extreme Networks*, 2019 WL 3290770, at *3.

## VII.    PROPOSED SCHEDULE OF EVENTS

Plaintiff respectfully proposes the following schedule for events leading to the Settlement Hearing, which is consistent with the Stipulation and the [Proposed] Preliminary Approval Order:

| Item | Deadline |
|---|---|
| Summary Notice Published | Ten (10) business days after the Notice Date |
| Postcard Notice Mailed or Email Notice Emailed | Thirty (30) business days after entry of the Preliminary Approval Order and receipt of list of the holders of Gritstone common stock or securities during the Class Period |
| Notice and Claim Form posted on a dedicated Settlement Website | Thirty (30) business days after entry of the Preliminary Approval Order |
| Briefs in support of final approval of Settlement, Plan of Allocation, and request for attorneys' fees and litigation expenses | Thirty-five (35) calendar days prior to the Settlement Hearing |

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (CASE NO. 3:24-cv-03640-CRB)

| Requests for exclusion from the Settlement Class | Twenty-one (21) calendar days prior to the Settlement Hearing |
|---|---|
| Reply papers | Seven (7) calendar days prior to the Settlement Hearing |
| Serve and file proof, by affidavit or declaration, of mailing and publication | Fourteen (14) calendar days prior to the Settlement Hearing |
| File Proof of Claim | Twenty-one (21) calendar days prior to the Settlement Hearing |
| Appearance at Settlement Hearing | Twenty-one (21) calendar days prior to the Settlement Hearing |
| Objections to Settlement | Twenty-one (21) calendar days prior to the Settlement Hearing |
| Settlement Hearing | At least 120 days after the Notice Date, or at the Court's earliest convenience |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the [Proposed] Preliminary Approval Order, granting preliminary approval of the Settlement, certifying the Settlement Class for settlement purposes, appointing Plaintiff as class representative and Lead Counsel as Class Counsel, approving the form and manner of giving notice of the proposed Settlement to the Settlement Class, authorizing retention of Strategic Claims Services as the Settlement Administrator, and setting a final approval hearing date.

Dated: May 15, 2026

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Samantha Daniels*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
*(pro hac vice application forthcoming)*
J. Alexander Hood II *(pro hac vice)*
Samantha Daniels *(pro hac vice)*
600 Third Avenue, 20th Floor

25
PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT (CASE NO. 3:24-cv-03640-CRB)

New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
sdaniels@pomlaw.com

*Counsel for Lead Plaintiff Richard Rodriguez and Lead Counsel for the Class*

**THE SCHALL FIRM**
Brian Schall
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Richard Rodriguez*

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT (CASE NO. 3:24-cv-03640-CRB)