POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman (*pro hac vice*)
J. Alexander Hood II (*pro hac vice*)
Samantha Daniels (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
sdaniels@pomlaw.com

*Counsel for Lead Plaintiff Richard Rodriguez and Lead Counsel for the Settlement Class*
[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE GRITSTONE BIO, INC. SECURITIES LITIGATION<br><br>This Document Relates to: ALL ACTIONS | Case No. 3:24-cv-03640-CRB<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: December 4, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Charles R. Breyer<br>Courtroom 6, 17th Floor (via Zoom) |

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 4, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Charles R. Breyer, United States District Judge, by Zoom videoconference as directed in the Clerk's Notice of August 13, 2026 (ECF No. 92), Court-appointed Lead Plaintiff Richard Rodriguez ("Plaintiff"), on behalf of himself and the Settlement Class, will and hereby does move the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for entry of an order and final judgment: (i) granting final approval of the proposed class action Settlement with Defendant Andrew R. Allen ("Defendant") on the terms set forth in the Stipulation of Settlement dated May 15, 2026 (ECF No. 87-2) (the "Stipulation"); (ii) finally certifying the Settlement Class for purposes of the Settlement and confirming the appointment of Plaintiff as Class Representative and Pomerantz LLP as Class Counsel; (iii) approving the proposed Plan of Allocation; (iv) finding that notice to the Settlement Class satisfied Rule 23, due process, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and 28 U.S.C. § 1715; and (v) dismissing the Action with prejudice and entering the [Proposed] Final Approval Order and [Proposed] Final Judgment submitted herewith (the "Settlement Motion").[1]

This Settlement Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the concurrently filed Declaration of Jeremy A. Lieberman in Support of (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and (2) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff (the "Lieberman Declaration" or "Lieberman Decl.") and the exhibits thereto; the Declaration of Lead Plaintiff Richard Rodriguez ("Rodriguez Decl."); the Declaration of Sarah Evans of Strategic Claims Services

[1] Lead Counsel is separately and simultaneously filing a Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff Pursuant to 15 U.S.C. § 78u-4(a)(4) (the "Fee Motion"), with a separate memorandum of points and authorities. The Lieberman Declaration is submitted in support of both motions. Both motions are unopposed.

("Evans Decl."); the Stipulation and the exhibits thereto; the [Proposed] Final Approval Order and [Proposed] Final Judgment; the pleadings and prior proceedings in this Action; and such other written and oral argument as may be presented to the Court.

## STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))

1. Whether the proposed Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and should be finally approved.

2. Whether the Settlement Class should be finally certified under Rules 23(a) and 23(b)(3) for purposes of the Settlement.

3. Whether notice to the Settlement Class satisfied Rule 23(c)(2)(B) and (e)(1), due process, the PSLRA, and 28 U.S.C. § 1715.

4. Whether the proposed Plan of Allocation is fair, reasonable, and adequate and should be approved.

## TABLE OF CONTENTS


SUMMARY OF ARGUMENT ..... 1

I. PRELIMINARY STATEMENT ..... 1

II. SUMMARY OF THE LITIGATION ..... 3

III. THE SETTLEMENT WARRANTS FINAL APPROVAL ..... 4

A. Standards Governing Final Approval of Class Action Settlements. ..... 4

B. The Settlement Satisfies the Requirements of Rule 23(e)(2). ..... 5

1. Plaintiff and Class Counsel Have Adequately Represented the Settlement Class. ..... 5

2. The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Mediator. ..... 6

3. The Settlement Provides Adequate and Reasonable Relief for the Settlement Class. ..... 7

4. The Method of Processing and Distributing Relief Is Effective. ..... 9

5. The Terms of the Requested Attorneys' Fees Are Fair and Reasonable. ..... 9

6. The Only Agreement Under Rule 23(e)(3) Is a Standard Supplemental Agreement. ..... 10

7. The Experience and Views of Counsel and the Reaction of the Settlement Class Support Approval. ..... 10

IV. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS ..... 11

V. THE NOTICE PROGRAM SATISFIED DUE PROCESS, RULE 23, THE PSLRA, AND CAFA ..... 12

VI. THE PLAN OF ALLOCATION TREATS SETTLEMENT CLASS MEMBERS EQUITABLY ..... 14

VII. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....................1, 11

*In re Aqua Metals, Inc. Sec. Litig.*,
2022 WL 612804 (N.D. Cal. Mar. 2, 2022)....................9

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001)....................12

*Betorina v. Randstad US, L.P.*,
2017 WL 1278758 (N.D. Cal. Apr. 6, 2017)....................7

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)....................1, 5, 6, 7

*In re BofI Holding, Inc. Sec. Litig.*,
2022 WL 9497235 (S.D. Cal. Oct. 14, 2022)....................14

*In re Celera Corp. Sec. Litig.*,
2015 WL 7351449 (N.D. Cal. Nov. 20, 2015)....................8

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019)....................5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004).................... *passim*

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)....................4

*Cullen v. Ryvyl Inc.*,
2025 WL 3731036 (S.D. Cal. Dec. 19, 2025), *amended on other grounds*,
2026 WL 374941 (S.D. Cal. Feb. 9, 2026)....................6

*Desai v. Deutsche Bank Sec. Ltd.*,
573 F.3d 931 (9th Cir. 2009)....................12

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016)....................13

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)....................7

*Fleming v. Impax Labs., Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) ........ 8

*In re Google LLC St. View Elec. Commc'ns Litig.*,
611 F. Supp. 3d 872 (N.D. Cal. 2020) (Breyer, J.), *aff'd*, 21 F.4th 1102 (9th Cir. 2021) ........ 1, 11

*Hampton v. Aqua Metals, Inc.*,
2021 WL 4553578 (N.D. Cal. Oct. 5, 2021) ........ 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds by, Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........ 12

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sep. 4, 2018) ........ 10

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ........ 6, 7

*Hunt v. Bloom Energy Corp.*,
2023 WL 7167118 (N.D. Cal. Oct. 31, 2023) ........ 9

*Hunt v. Bloom Energy Corp.*,
2024 WL 1995840 (N.D. Cal. May 6, 2024) ........ 13

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ........ 5, 12

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........ 8

*Kuraica v. Dropbox, Inc.*,
2021 WL 5826228 (N.D. Cal. Dec. 8, 2021) ........ 11

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012). In the Preliminary Approval Order, the Court ........ 13

*Leventhal v. Chegg, Inc.*,
2025 WL 1481382 (N.D. Cal. May 21, 2025) ........ 9

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ........ 9

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ........ 6

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ....................8

*Longo v. OSI Sys., Inc.*,
2022 WL 22995096 (C.D. Cal. Aug. 31, 2022)....................6, 14

*Luna v. Marvell Tech. Grp.*,
2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ....................8

*In re Lyft, Inc. Sec. Litig.*,
2022 WL 17740302 (N.D. Cal. Dec. 16, 2022)....................10

*Malriat v. QuantumScape Corp.*,
2022 WL 17974629 (N.D. Cal. Dec. 19, 2022)....................12

*Mendoza v. Hyundai Motor Co.*,
2017 WL 342059 (N.D. Cal. Jan. 23, 2017)....................5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)....................10

*In re Nuvelo, Inc. Sec. Litig.*,
2011 WL 2650592 (N.D. Cal. July 6, 2011). Notice....................1, 8

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ....................4, 7

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)....................1, 11, 14

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ....................10

*Pitta v. Allen*,
No. 24-cv-06018 (N.D. Cal.) ....................8

*Quiruz v. Specialty Commodities, Inc.*,
2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ....................10

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ....................1, 6, 8

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
944 F.3d 1035 (9th Cir. 2019) ....................5

*In re Seagate Tech. II Sec. Litig.*,
843 F. Supp. 1341 (N.D. Cal. 1994)....................12

*In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ........6

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ........4

*Thant v. Rain Oncology Inc.*, 2026 WL 1113721 (N.D. Cal. Apr. 23, 2026) ........5, 6, 12

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ........12

*Vataj v. Johnson*, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ........9

*In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645 (N.D. Cal. Jan. 13, 2005), *amended on other grounds*, 2005 WL 226154 (N.D. Cal. Jan. 31, 2005) ........12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847 (N.D. Cal. May 10, 2019) (Breyer, J.) ........6

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022) ........8

**Statutes**

15 U.S.C. §78j(b) ........3

15 U.S.C. §78t(a) ........3

15 U.S.C. § 78u-4 ........2, 10, 13, 14

28 U.S.C. § 1715 ........2, 3, 14

Class Action Fairness Act ........13

Private Securities Litigation Reform Act of 1995 ........ *passim*

**Other Authorities**

Fed. R. Civ. P. 23 ........ *passim*

www.strategicclaims.net/Gritstone/ ........13

# MEMORANDUM OF POINTS AND AUTHORITIES

## SUMMARY OF ARGUMENT

The $6,000,000 all-cash Settlement satisfies each of the Rule 23(e)(2) factors and the *Churchill* factors the Ninth Circuit applies to class settlements. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).[2] It was negotiated at arm's length through a mediator's proposal from Jed Melnick of JAMS after two rounds of motion-to-dismiss briefing, and it bears none of the "subtle signs" of collusion identified in *Bluetooth*, 654 F.3d at 947: no clear-sailing provision, no reversion, and a fee request below the amount disclosed in the Notice, *see Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). It recovers approximately 7.5% of maximum estimated damages, well within the range approved in this District, from a wasting insurance tower, with the issuer in bankruptcy and a fully briefed motion to dismiss pending that had already succeeded once on scienter. *See In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *1–2 (N.D. Cal. July 6, 2011). Notice was disseminated as the Court directed, the Plan of Allocation treats every Settlement Class Member under the same formula, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008), and the reaction of the Settlement Class (*i.e.*, no objections and no requests for exclusion to date) confirms the Settlement's fairness, *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 896 (N.D. Cal. 2020) (Breyer, J.), *aff'd*, 21 F.4th 1102 (9th Cir. 2021). The Settlement Class, which the Court preliminarily certified, continues to satisfy Rules 23(a) and 23(b)(3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

## I. PRELIMINARY STATEMENT

The proposed $6,000,000 all-cash Settlement resolves all claims in this securities class action against Defendant Andrew R. Allen, the former Chief Executive Officer of Gritstone bio, Inc. ("Gritstone" or the "Company"). The Settlement was achieved only after more than two years of hard-fought litigation, during which Gritstone declared bankruptcy, the Parties briefed two

---

[2] Unless otherwise defined, capitalized terms have the meanings given to them in the Stipulation.

rounds of motions to dismiss, and the Parties engaged in a full-day, arm's-length mediation before an experienced mediator that culminated in a mediator's proposal the Parties accepted. If approved, the Settlement will recover approximately 7.5% of the maximum damages Plaintiff's consultant estimated could be proven if every contested issue (including attribution of the entire April 1-2, 2024 price decline to the alleged fraud) were resolved in Plaintiff's favor, and a substantially higher share of the damages realistically recoverable at trial. Lieberman Decl. ¶¶ 3, 40. That is an excellent result in a case where the only source of recovery was a finite, wasting directors-and-officers insurance tower.

This Court has already preliminarily reviewed the Settlement and found it fair, reasonable, and adequate to the Settlement Class, subject to further assessment at the Settlement Hearing. Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 91) (the "Preliminary Approval Order") ¶ 1. Pursuant to the Court-approved notice program, the Claims Administrator has mailed the Postcard Notice, emailed the Email Notice, published the Summary Notice, posted the Settlement materials on a dedicated website, and provided notice to brokers and nominees. As of the date of the Evans Declaration, 28,387 notices had been disseminated to potential Settlement Class Members and their nominees (17,219 Postcard Notices and 11,168 Email Notices) and no Settlement Class Member had objected to the Settlement or requested exclusion. Evans Decl. ¶¶ 7–9, 14–15. The deadline to object or request exclusion (November 13, 2026) has not yet passed; Plaintiff will report on the Settlement Class's reaction, and respond to any objections, in his reply papers due November 27, 2026. Every other condition to the Settlement has been satisfied: the Bankruptcy Court approved the insurers' payment on August 19, 2026, and the Settlement Amount has been deposited in escrow. Lieberman Decl. ¶ 15.

Because the Settlement is plainly fair, reasonable, and adequate, the notice program satisfied due process and the PSLRA, the Settlement Class satisfies Rules 23(a) and 23(b)(3), and the Plan of Allocation treats Settlement Class Members equitably, Plaintiff respectfully requests that the Court grant final approval of the Settlement, finally certify the Settlement Class, approve the Plan of Allocation, and enter the proposed Final Approval Order and Final Judgment.

## II. SUMMARY OF THE LITIGATION

The operative Second Amended Complaint ("SAC") asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, alleging that during the period from March 9, 2023 through April 2, 2024 (the "Class Period"), Defendant made and authorized materially false and misleading statements concerning Gritstone's compliance with current Good Manufacturing Practices, its ability to perform its $423 million contract with the Biomedical Advanced Research and Development Authority ("BARDA"), and the timeline for its CORAL Phase 2b clinical trial. ECF No. 70. The history of the Action is set out in detail in the Lieberman Declaration and in the preliminary approval motion, ECF No. 87 at 2–3, and is only summarized here.[3]

Plaintiff filed this Action on June 17, 2024 and was appointed Lead Plaintiff on September 10, 2024. ECF Nos. 1, 32. Gritstone filed for Chapter 11 protection on October 10, 2024, ECF No. 41, leaving its former officers as the only defendants and Defendant's liability insurance as the only practical source of recovery. After an investigation that included interviews of dozens of former employees, Plaintiff filed the Amended Complaint against Defendant and Gritstone's former Chief Financial Officer. ECF Nos. 43, 46.

On July 24, 2025, the Court dismissed that pleading (with prejudice as to the CFO and without prejudice as to Defendant) holding that it failed to allege that the challenged statements were materially false or misleading when made, with the exception of certain pre-BARDA statements relating to Gritstone's manufacturing practices, and failed to allege scienter with respect to Defendant Allen. ECF No. 69. Plaintiff filed the SAC on August 21, 2025, adding allegations from six confidential witnesses, including the former Director of Quality Assurance who led Gritstone's internal cGMP task force. ECF No. 70. Defendant's motion to dismiss the SAC, which again challenged falsity, scienter, and loss causation, was fully briefed by January 9, 2026 and remained pending when the Parties settled. ECF Nos. 75, 78, 81. Lieberman Decl. ¶¶ 5–12.

---

[3] Consistent with the Northern District's Procedural Guidance for Class Action Settlements, the Fee Motion does not repeat the case history and refers to this memorandum and the Lieberman Declaration.

On April 22, 2026, the Parties participated in a full-day mediation before Jed D. Melnick of JAMS after exchanging detailed mediation statements and exhibits addressing liability, loss causation, damages, insurance, and the effect of the bankruptcy. The session did not resolve the matter; the Parties then accepted Mr. Melnick's mediator's proposal of $6,000,000, executed a Memorandum of Understanding on April 24, 2026, and executed the Stipulation on May 15, 2026. Lieberman Decl. ¶¶ 13, 14. The Court heard Plaintiff's unopposed motion for preliminary approval on July 24, 2026 and entered the Preliminary Approval Order on August 5, 2026, which (i) preliminarily approved the Settlement; (ii) preliminarily certified the Settlement Class; (iii) appointed Plaintiff as Class Representative and Pomerantz LLP as Class Counsel; (iv) approved the form and manner of notice; and (v) authorized the retention of Strategic Claims Services ("SCS") as Claims Administrator. ECF Nos. 90–92. Since then, Plaintiff and SCS have implemented the notice program as directed.

## III. THE SETTLEMENT WARRANTS FINAL APPROVAL

### A. Standards Governing Final Approval of Class Action Settlements.

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution," *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Rule 23(e)(2) permits approval "only after a hearing and only on finding that [the settlement] is fair, reasonable, and adequate" after considering whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief, the terms of any proposed fee award, and any Rule 23(e)(3) agreement; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). Courts in this Circuit also consider the *Churchill* factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely

duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill*, 361 F.3d at 575; *Bluetooth*, 654 F.3d at 946.[4] Because the Settlement was reached before class certification, the Court applies the heightened scrutiny for "subtle signs" of collusion described in *Bluetooth*, 654 F.3d at 947, and *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). *See Thant v. Rain Oncology Inc.*, 2026 WL 1113721, at *2, *6 (N.D. Cal. Apr. 23, 2026).

The Court's Preliminary Approval Order assessed the Settlement and found it preliminarily fair, reasonable, and adequate. Preliminary Approval Order ¶ 1. Nothing has changed since then except the completion of notice and the Settlement Class's favorable response. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now.").

### B. The Settlement Satisfies the Requirements of Rule 23(e)(2).

#### 1. Plaintiff and Class Counsel Have Adequately Represented the Settlement Class.

Adequacy under Rule 23(e)(2)(A) turns on whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether they "prosecute[d] the action vigorously on behalf of the class." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019). Class Counsel is highly experienced in securities litigation and, together with Plaintiff, vigorously prosecuted this Action for more than two years, including by investigating the claims through interviews of dozens of former employees and consultation with damages experts; drafting and filing three complaints; opposing two rounds of motions to dismiss; monitoring the bankruptcy and the insurance coverage that would fund any recovery; and negotiating the Settlement.

---

[4]There is no governmental participant in this Action, so the seventh *Churchill* factor is inapplicable. *See Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

Lieberman Decl. ¶¶ 7, 10, 12, 13. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (Breyer, J.) (settlement procedurally fair where "Lead Counsel vigorously litigated this action during motion practice"); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) ("*Helfer II*"), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). Plaintiff has no interests antagonistic to the Settlement Class: he purchased Gritstone securities during the Class Period, was injured by the same alleged misstatements, and will recover under the same Plan of Allocation as every other Settlement Class Member. Rodriguez Decl. ¶¶ 2, 4–8; *see In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *6 (C.D. Cal. Apr. 23, 2024). The Court already found Plaintiff and Lead Counsel adequate when it preliminarily certified the Settlement Class. Preliminary Approval Order ¶¶ 4–6.

**2. The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Mediator.**

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965. The participation of an experienced mediator is "a factor weighing in favor of a finding of non-collusiveness," *Bluetooth*, 654 F.3d at 948, and courts have specifically recognized that Mr. Melnick's involvement supports a finding that a settlement is non-collusive. *See Thant*, 2026 WL 1113721, at *6; *Cullen v. Ryvyl Inc.*, 2025 WL 3731036, at *6 (S.D. Cal. Dec. 19, 2025), *amended on other grounds*, 2026 WL 374941 (S.D. Cal. Feb. 9, 2026). The Settlement here was reached only through a mediator's proposal, after a full-day session in which the Parties (each represented by experienced securities counsel) debated liability, loss causation, damages, and collectability, and after Lead Counsel had developed the case through two rounds of dispositive briefing and consultation with experts. Lieberman Decl. ¶¶ 13, 14. Counsel therefore "had a sound basis for measuring the terms of the settlement." *Longo v. OSI Sys., Inc.*, 2022 WL 22995096, at *4 (C.D. Cal. Aug. 31, 2022).

None of the "subtle signs" of collusion is present. *Bluetooth*, 654 F.3d at 947. Lead Counsel is requesting a fee of 25% of the net fund, below the one-third ceiling disclosed to the class and at the Ninth Circuit benchmark, not a "disproportionate distribution of the settlement." *Id.* There is no clear-sailing agreement: Defendant made no commitment regarding fees, and fees were not discussed before the Settlement Amount was fixed.[5] And no portion of the Settlement Fund, including any unawarded fees, reverts to Defendant or his insurers. Lieberman Decl. ¶¶ 14, 22. The Settlement is thus "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at 625.

**3. The Settlement Provides Adequate and Reasonable Relief for the Settlement Class.**

Rule 23(e)(2)(C)(i) directs the Court to consider "the costs, risks, and delay of trial and appeal," together with the overlapping *Churchill* factors of the strength of the case and the risk, expense, complexity, and duration of further litigation, which are often considered together. Fed. R. Civ. P. 23(e)(2)(C)(i); *Betorina v. Randstad US, L.P.*, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017). Securities class actions "are highly complex and [litigating] securities class litigation is notably difficult and notoriously uncertain." *Hefler II*, 2018 WL 6619983, at *13. To prevail, Plaintiff would have had to establish every element of his claims, including scienter and loss causation, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005), while Defendant needed to succeed on only one defense. This Action presented those risks in an unusually acute form.

*First*, the Settlement Class faced real risks of recovering nothing. The Court had already dismissed the Amended Complaint for failure to plead falsity with respect to most of the challenged statements, a strong inference of scienter as to Defendant, ECF No. 69, and Defendant's fully briefed motion to dismiss the SAC pressed the same argument. Lieberman Decl. ¶ 17. Moreover, even if the SAC survived, Plaintiff would have had to prove scienter (*i.e.*, "the most difficult element" of a securities fraud claim) through former employees and the records of a

---

[5] Indeed, the Stipulation of Settlement specifically provides that neither Defendant nor the Released Defendant's Parties are responsible for paying any attorneys' fees or costs. *See* Stipulation of Settlement ¶ 18.

bankrupt company, and then prevail in a "battle of the experts" over loss causation. *See Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007). In addition, the largest Class Period decline (48.94% on April 1–2, 2024) coincided with mixed GRANITE trial data and an emergency dilutive offering, and Defendant contended that none of it was attributable to the alleged fraud. Lieberman Decl. ¶¶ 18, 19. Disaggregating those confounding events would have been the central, and most uncertain, damages issue at trial. *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016); *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015). Over the course of the litigation, Defendant has vehemently denied any wrongdoing and would continue to aggressively litigate this case at each step. Gritstone's bankruptcy also left Defendant's wasting insurance tower as the only practical source of recovery, so every month of litigation reduced the limits available to the class, and those limits were also exposed to the estate's claims in *Pitta v. Allen*, No. 24-cv-06018 (N.D. Cal.). Lieberman Decl. ¶ 20. Courts in this District have approved settlements for far smaller percentages of damages in the face of insolvency. *See Nuvelo*, 2011 WL 2650592, at *1–2 (approximately 2% of damages against insolvent defendant). Finally, Plaintiff faced the risk of failing to obtain or maintain class certification, *Fleming v. Impax Labs., Inc.*, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022), and, even after a complete victory at trial, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years," *Rodriguez*, 563 F.3d at 966.

"By contrast, the Settlement provides … timely and certain recovery." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022). The $6,000,000 recovery represents approximately 7.5% of the roughly $80 million in maximum aggregate damages estimated by Plaintiff's consultant, a figure that assumes Plaintiff would prevail on every contested issue, including attribution of the entire April 2024 decline to the alleged fraud, and a substantially higher percentage if, as Defendant contended, any part of that decline is attributed to the GRANITE trial data or the dilutive offering rather than to the alleged fraud. Lieberman Decl. ¶¶ 3, 40. That recovery exceeds

those courts in this Circuit routinely find fair and adequate. *See Hunt v. Bloom Energy Corp.*, 2023 WL 7167118, at *7 (N.D. Cal. Oct. 31, 2023) (5.2% of damages for surviving claims and 1.8% of all possible damages); *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022) (approximately 7.3% of likely recoverable damages); *Leventhal v. Chegg, Inc.*, 2025 WL 1481382, at *7, *10 (N.D. Cal. May 21, 2025) (3.9% of maximum estimated damages); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approximately 2% of total estimated damages). "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015). This factor strongly favors final approval.

#### 4. The Method of Processing and Distributing Relief Is Effective.

Rule 23(e)(2)(C)(ii) considers "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The method here is the well-established procedure used in securities class actions: the Net Settlement Fund will be distributed to Authorized Claimants who submit valid Claim Forms, online or by mail, to SCS, an experienced administrator selected through competitive bidding, which will process claims under Lead Counsel's supervision and afford claimants an opportunity to cure deficiencies or seek Court review of a rejected claim. Preliminary Approval Order ¶¶ 7, 11–14. A claims process is necessary because the Parties do not possess class members' trading data, and residual funds will be redistributed to Authorized Claimants rather than reverting. Lieberman Decl. ¶¶ 24, 31. This factor favors final approval.

#### 5. The Terms of the Requested Attorneys' Fees Are Fair and Reasonable.

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the Fee Motion, Lead Counsel requests a fee of 25% of the Settlement Fund net of Litigation Expenses, Notice and Administration Costs, and the award to Plaintiff (the method and percentage this Court has consistently applied in common-fund cases) together with reimbursement of $81,093.43 in

Litigation Expenses and an award of $5,000 to Plaintiff under 15 U.S.C. § 78u-4(a)(4). The Notice informed Settlement Class Members that fees of up to one-third of the Settlement Fund and expenses of up to $500,000 could be sought, Preliminary Approval Order ¶¶ 9, 23, and the request is well within those amounts. Fees and expenses are payable upon award subject to Plaintiff's Counsel's obligation to repay any amount later reduced or reversed, Stipulation ¶ 17, approval of the fee is not a condition of the Settlement, and the Settlement cannot be terminated based on any ruling on fees or expenses, *id.* ¶¶ 17, 28.

**6. The Only Agreement Under Rule 23(e)(3) Is a Standard Supplemental Agreement.**

The only agreement made in connection with the Settlement is a standard Supplemental Agreement providing that, if requests for exclusion exceed an agreed threshold, Defendant has the option (but not the obligation) to terminate the Settlement. Stipulation ¶ 29; Lieberman Decl. ¶ 23. Such agreements are common and do not undermine a settlement's fairness. *See In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022); *Hampton v. Aqua Metals, Inc.*, 2021 WL 4553578, at *10 (N.D. Cal. Oct. 5, 2021); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sep. 4, 2018). The threshold is kept confidential for the practical reason that disclosure would invite its use as leverage, *see In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015), and it has not been met: no Settlement Class Member has requested exclusion. Evans Decl. ¶ 14.

**7. The Experience and Views of Counsel and the Reaction of the Settlement Class Support Approval.**

Courts grant "considerable weight" to the opinion of experienced counsel who endorse a settlement reached through arm's-length negotiation. *Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020); *see Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Lead Counsel, which focuses its practice on securities litigation, entered the mediation with a firm understanding of the strengths and weaknesses of the case (developed through its investigation, two rounds of motion-to-dismiss briefing, and

consultation with damages experts) and has concluded that the Settlement is fair, reasonable, and adequate. Lieberman Decl. ¶¶ 7, 40, 42. "There is nothing to counter the presumption that [Class] Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043. Defendant, too, was represented throughout by experienced counsel at Fenwick & West LLP, further dispelling any suggestion of collusion.

The reaction of the Settlement Class likewise supports approval. "A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Kuraica v. Dropbox, Inc.*, 2021 WL 5826228, at *5 (N.D. Cal. Dec. 8, 2021); *see Google St. View*, 611 F. Supp. 3d at 896; *Churchill*, 361 F.3d at 577. After a notice program that delivered 28,387 notices to potential Settlement Class Members and their nominees, supplemented by publication, the DTC Legal Notice System, and a settlement website, no Settlement Class Member has objected to the Settlement, the Plan of Allocation, or the fee and expense request, and none has requested exclusion. Evans Decl. ¶¶ 9, 14–15; Lieberman Decl. ¶ 28. The deadline to object or request exclusion is November 13, 2026, and Plaintiff will report on the final tally and address any objections in his reply papers, to be filed on or before November 27, 2026.[6]

## IV. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

For the reasons set forth in the preliminary approval motion and the Preliminary Approval Order, the Settlement Class (all persons and entities that purchased publicly traded Gritstone securities between March 9, 2023 and April 2, 2024, both dates inclusive, subject to the exclusions set forth in the Stipulation) satisfies Rules 23(a) and 23(b)(3) for purposes of the Settlement. Preliminary Approval Order ¶¶ 4–6; ECF No. 87 at 18–23. Because the class is certified solely for settlement, the Court need not address manageability at trial, *Amchem*, 521 U.S. at 620, and the Settlement Class is coextensive with the class alleged in the SAC.

[6] The Procedural Guidance directs that the final approval briefing include the number of undeliverable notices, claims submitted, opt-outs, and objections, and respond to any objections. Of the 17,219 Postcard Notices mailed, only 40 were returned undeliverable, and 23 of those were re-mailed to updated addresses. Evans Decl. ¶ 10. Two hundred and fifty one Claim Forms had been received as of the Evans Declaration, *id.* ¶ 16; the claim deadline is November 13, 2026, and Plaintiff will report updated claims figures in his reply and at the Settlement Hearing.

Rule 23(a). Numerosity is satisfied because millions of shares of Gritstone common stock traded on Nasdaq during the Class Period, so joinder is impracticable. *Malriat v. QuantumScape Corp.*, 2022 WL 17974629, at *3 (N.D. Cal. Dec. 19, 2022); *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *4 (N.D. Cal. Jan. 13, 2005), *amended on other grounds*, 2005 WL 226154 (N.D. Cal. Jan. 31, 2005). Commonality is satisfied because the Action presents numerous common questions, including whether Defendant's statements misrepresented or omitted material facts, whether he acted with scienter, whether the misconduct affected the price of Gritstone securities, loss causation, and the measure of damages. *Thant*, 2026 WL 1113721, at *2-3. Typicality is satisfied because Plaintiff's claims arise from the same course of conduct and rest on the same legal theories as the Settlement Class's. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by, Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Armstrong v. Davis*, 275 F.3d 849, 868–69 (9th Cir. 2001). And adequacy is satisfied for the reasons stated in Section III.B.1. *Hyundai*, 926 F.3d at 566.

Rule 23(b)(3). Common questions predominate because the central issues—*i.e.*, whether Defendant made material misrepresentations in violation of the federal securities laws and whether they caused the Settlement Class's losses—are common to all members and "more prevalent or important than" any individualized questions. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). A class action is superior to other methods of adjudicating claims arising from alleged misstatements disseminated to thousands of investors, which would otherwise require duplicative individual litigation. *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 937 (9th Cir. 2009); *In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1351–52 (N.D. Cal. 1994). The Court should finally certify the Settlement Class and confirm the appointment of Plaintiff as Class Representative and Pomerantz LLP as Class Counsel.

## V. THE NOTICE PROGRAM SATISFIED DUE PROCESS, RULE 23, THE PSLRA, AND CAFA

Notice of a class action settlement must be "the best notice that is practicable under the circumstances," directed "in a reasonable manner to all class members who would be bound by

the proposal." Fed. R. Civ. P. 23(c)(2)(B), (e)(1)(B). Notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill*, 361 F.3d at 575; *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). In the Preliminary Approval Order, the Court approved the notice program and found it the best notice practicable under the circumstances. Preliminary Approval Order ¶¶ 7, 9.

SCS implemented that program as directed. On September 9, 2026, it posted the Notice and Claim Form on the DTC Legal Notice System, sent notification letters to the 2,424 banks, brokerage firms, and other nominees on its proprietary list, and launched the settlement website, www.strategicclaims.net/Gritstone/, with a toll-free line. It completed the Postcard mailing to holders of record on September 17, 2026, the Notice Date; and, as of the date of its declaration, it had mailed or provided for forwarding 17,219 Postcard Notices and sent 11,168 Email Notices (28,387 notices in all) with only 40 returned undeliverable. On September 28, 2026, within ten business days after the Notice Date, it published the Summary Notice in *Investor's Business Daily* and over *PR Newswire*. Evans Decl. ¶¶ 3–13; Lieberman Decl. ¶ 26. This program of individually mailed and emailed notice supplemented by nominee outreach, publication, and a settlement website satisfies Rule 23, due process, the PSLRA, and the Procedural Guidance. *See Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *4 (N.D. Cal. May 6, 2024); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *7 (N.D. Cal. Feb. 11, 2016).

The Notice described the nature of the Action and the claims, the Settlement Class, the Settlement Amount, and the estimated average recovery per damaged share. It also conveys the Parties' disagreement over damages, the reasons for the Settlement, the Plan of Allocation, and the maximum fees, expenses, and award to Plaintiff to be sought. It also makes clear the Settlement Class Members' rights to object, request exclusion, and submit a Claim Form, and the deadlines for doing so. It also describes the releases, the Settlement Hearing, and contact information for Lead Counsel and SCS. Lieberman Decl. ¶ 27. It therefore contained every element required by Rule 23(c)(2)(B) and 15 U.S.C. § 78u-4(a)(7). Notice under the Class Action Fairness Act was

served on May 26, 2026, more than 90 days before the Settlement Hearing, and no governmental official has objected. 28 U.S.C. § 1715(b), (d); Lieberman Decl. ¶ 30.

## VI. THE PLAN OF ALLOCATION TREATS SETTLEMENT CLASS MEMBERS EQUITABLY

Rule 23(e)(2)(D) requires that a settlement "treat[] class members equitably relative to each other." A plan of allocation is "governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. The Plan of Allocation, set forth in the Notice and developed in consultation with Plaintiff's damages consultant, calculates a Recognized Loss for each Class Period purchase of Gritstone common stock based on the estimated alleged artificial inflation on the dates of purchase and sale (or at the end of the Class Period), as reflected in the inflation tables in the Notice, and subject to the PSLRA's 90-day look-back provision, 15 U.S.C. § 78u-4(e). The Net Settlement Fund will be distributed *pro rata* to Authorized Claimants according to their Recognized Claims; only claimants entitled to at least $10.00 will receive a payment; and residual funds will be redistributed to Authorized Claimants rather than distributed cy pres or returned to Defendant. Lieberman Decl. ¶¶ 31-32. Because every Settlement Class Member, including Plaintiff, is subject to the same formula and will receive his, her, or its *pro rata* share, the Plan of Allocation treats Settlement Class Members equitably and should be approved. *See In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *8 (S.D. Cal. Oct. 14, 2022); *Longo*, 2022 WL 22995096, at *7.[7] No Settlement Class Member has objected to the Plan.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (i) grant final approval of the Settlement as fair, reasonable, and adequate under Rule 23(e); (ii) finally certify the Settlement Class under Rules 23(a) and 23(b)(3) and confirm the appointment of Plaintiff as Class Representative and Pomerantz LLP as Class Counsel; (iii) approve the Plan of Allocation;

[7] Plaintiff's request under 15 U.S.C. § 78u-4(a)(4) for reimbursement of his reasonable costs and expenses directly relating to his representation of the Settlement Class does not constitute preferential treatment; the PSLRA expressly contemplates such an award in addition to a representative's *pro rata* recovery.

and (iv) enter the [Proposed] Final Approval Order and [Proposed] Final Judgment submitted herewith.

Dated: October 30, 2026

Respectfully submitted,

**POMERANTZ LLP**

By: /s/ *Jeremy A. Lieberman*
Jeremy A. Lieberman (*pro hac vice*)
J. Alexander Hood II (*pro hac vice*)
Samantha Daniels (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
sdaniels@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Richard Rodriguez and Lead Counsel for the Settlement Class*

**THE SCHALL FIRM**
Brian Schall
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Richard Rodriguez*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Jeremy A. Lieberman, am the ECF user whose identification and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have concurred in this filing.

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman